*392
 
 Turner, J.
 

 The question here presented is whether the decision of the Board of Tax Appeals sustaining the determination of the Tax Commissioner is reasonable and lawful. (Section 5611-2, General Code.)
 

 Under Section 5495, General Code, the franchise or excise tax authorized by Section 5499, General Code, and determined according to Section 5498, General Code, is levied upon foreign corporations “for the privilege of doing business in this state or owning or using a part or all of its capital or property in this state or for holding a certificate of compliance with the laws of this state authorizing it to do business in this state, during the calendar year in which such fee is payable. ’ ’
 

 Such a tax has been held constitutional.
 
 Southern Gum Co.
 
 v.
 
 Laylin, Secy. of State,
 
 66 Ohio St., 578, 64 N. E., 564.
 

 Appellant does not challenge the state’s right to levy the tax, but does challenge the inclusion of the value of certain parts of its “business done in Ohio” in arriving at the numerator of the fraction whose denominator is the total value of appellant’s business wherever transacted.
 

 Section 5498, General Code, provides, in part:
 

 “After the filing of the annual corporation report the Tax Commission [Tax Commissioner] if it shall find such report to be correct, shall on or before the first Monday in May
 
 determine the vahte of the issued and outstanding shares of stock of every corporation reqitired to file sitch report. * * * The commission
 
 [commissioner]
 
 shall then determine as follows the base upon tvhich the fee provided for in Section 5499 of the General Code shall be computed.
 
 Divide into two equal parts the value as above determined of the issued and outstanding shares of stock of each corporation filing such report. Take one part and multiply by a fraction whose numerator is the fair value of
 
 *393
 
 .all the corporation’s property owned or used by it in Ohio and whose denominator is the fair value of all its property wheresoever situated in each case eliminating any item of good will; take the other part and multiply by a fraction whose numerator is the value ■of the business done by the corporation in this state •during the year preceding the date of the commence- . ment of its current annual accounting period and whose ■denominator is the total value of its- business during .said year wherever transacted. * * *
 

 “On the first Monday in June the Tax Commission [Tax Commissioner] shall certify to the Auditor of State the amount determined by it through adding the two figures thus obtained for each corporation.” (Italics ours.)
 

 Tax Commissioner’s Rule No. 275,.adopted pursuant to Sections 1464-3(13) and 1464-4, General Code, so far as pertinent, provides:
 

 “ Business done in and out of Ohio by a corporation subject to the payment of franchise taxes shall be determined under Section 5498, General Code, by allocating to the business fraction therein provided sales in and out of Ohio. * * *
 

 “In the case of manufacturing companies, all sales ■of goods manufactured in Ohio, wherever sold, shall be considered as Ohio sales, except sales of such products as are sold from warehouses outside of this state.
 

 ‘£ The denominator of such business fraction shall in all cases be the total sales wherever made.”
 

 It is to be observed that the foregoing rule is more liberal to the taxpayer than the provisions of Section •5498,
 
 supra,
 
 in that there is eliminated from the base of “business done by the corporation in this state” the value of all goods manufactured in Ohio but shipped to and sold from a warehouse outside of this state. 'Even if it were to be said that in substance the formula
 
 *394
 
 prescribed by Section 5498, General Code, does tax sales and not tbe privileges set forth in Section 5495, General Code, this rule removes all possibility of double taxation as sales from a warehouse in another state would probably constitute doing business in that state. Furthermore, this rule permits the value of all sales made from warehouses outside of the state of goods manufactured in Ohio to be added to the denominator of the business fraction.
 

 To avoid confusion, it must be kept crystal clear that the only purpose of the formula provided by Section 5498,
 
 supra,
 
 and supplemented by Rule No. 275,
 
 supra,
 
 is to determine by uniform rules and as nearly as may be
 
 the value of the use of the corporate franchise in this state.
 
 The employment of various factors in determining the part of the business of a corporation (whether domestic or foreign) done in Ohio is no indication that the subjects of such factors are being taxed. Instead, they are being used merely to compose a measuring stick. Commerce, both intrastate and interstate, is not regulated, forbidden or burdened. The record discloses no indication of double taxation.
 

 The state of Ohio does not levy any tax on or with respect to corporate income, or receipts or sales made inside or outside of Ohio of goods sold and shipped in intrastate or interstate commerce. This should be clear from the language of Section 5495, General Code, which provides:
 

 “The tax provided by this act for domestic corporations shall be the fee charged against each corporation organized for profit under the laws of this state, except as provided herein, for the privilege of exercising its franchise during the calendar year in which such fee is payable and
 
 the tax provided by this act for foreign corporations shall be the fee charged against each corporation organised for profit under the laws of any
 
 
 *395
 

 state or country other than Ohio, except as provided herein, for the privilege of doing business in this state or owning or using a part or all of its capital or property in this state or for holding a certificate of compliance with the laws of this state authorizing it to do business in this state, during the calendar year in ivhich such fee is payable.”
 
 (Italics ours.)
 

 Tlie same formula is used for both domestic and foreign corporations. The application of the formula for a domestic (but non-manufacturing) corporation is illustrated in the case of
 
 Cliffs Corp.
 
 v.
 
 Evatt, Tax Commr.,
 
 138 Ohio St., 336, 345
 
 et seq.,
 
 35 N. E. (2d), 144.
 

 Appellant owns reducing and manufacturing plants located in various places outside of Ohio, where its product is mined, reduced, refined and alloyed, and the material received at the Ohio plant has been partially fabricated at appellant’s plants outside of the state. In other words, appellant has what is known as a vertical organization, that is, it is a concern engaged in different stages of manufacture or distribution of its product in its conversion from raw to finished material.
 

 While appellant discusses the meaning of “business done” in its reply brief, it is said:
 

 “The Attorney Generals of Ohio have advised that the manufacturing operations of a foreign corporation in Ohio constitute ‘business done by the corporation in this state’ within the meaning of Section 5498 of the Ohio General Code, and the appellant in this case is not ■contesting this opinion.”
 

 We accept the foregoing definition of “business done” as correct.
 

 As stated by appellant:
 

 “The only issue in this case is as to the value of the business done in Ohio with respect to the $7,436,129.46, aggregate sales price, of goods sold by the appellant
 
 *396
 
 outside of Ohio to customers outside of Ohio and. shipped from the appellant’s Cleveland plant to points outside of Ohio.”
 

 As appellant sells none of its Ohio-manufactured products from warehouses outside of the state, the-commissioner used the figure of all sales of goods manufactured in Ohio by appellant as the numerator of this “business done” fraction. The evidence and agreed statement of facts show that the amount of goods manufactured in Ohio in the preceding year (1938) was $8,710,582, while the value of all sales made by appellant in Ohio and elsewhere in the same year was $71,147,722. This produced a fraction whose denominator is $71,147,722 and whose numerator is $8,710,582. Adding this fraction to the fraction whose numerator is the fair value of all of appellant’s property owned or used by it in Ohio and whose, denominator is the fair value of all of appellant’s property wheresoever situated, about which latter fraction there-is no dispute, the commissioner arrived at a base figure-of $13,722,387 as representing the proportionate part of appellant’s issued and outstanding shares represented by property owned and business done in the year-1938. The tax thus ascertained for the year 1939 is $13,722.39.
 

 Appellant claims that the base should not exceed $8,639,927.91, and that the tax as assessed is excessive-in the amount of $4,722.91. (Appellant in its assignment of errors also refers to the claimed base as. $8,999,481.)
 

 Appellant arrives at the foregoing results by the-use of the following data, which it submits:
 

 Deduct $2,003,585.68 for “the manufacturing cost incurred by appellant outside of Ohio on the goods sold outside of Ohio and shipped in interstate commerce from the appellant’s Ohio plant.”
 

 
 *397
 
 Deduct $371,061.68 as “the expense of selling said goods, all incurred by appellant outside of Ohio.”
 

 Deduct $873,060.02 as “general administration expense, all incurred by appellant outside of Ohio, with reference to said goods.”
 

 $2,776,684.38 “is the manufacturing cost incurred by appellant in Ohio on said goods.”
 

 $761,057.90 “is the part of the profit realized on the sale of said goods, which is apportioned, proportionately to costs, to the business activities, relating to said goods, which took place outside of Ohio.”
 

 $650,679.80 “is the part of the profit realized on the sale of said goods, which is so apportioned to the business activities, relating to said goods, which took place in Ohio.”
 

 $1,274,452.16 “is the aggregate selling price of goods shipped by appellant in intrastate commerce to Ohio customers, which is conceded to be Ohio business.”
 

 Appellant’s principal reliance is on the eases of
 
 Gwin, White & Prince, Inc.,
 
 v.
 
 Henneford,
 
 305 U. S., 434, 83 L. Ed., 272, 59 S. Ct., 325, and
 
 Hans Rees’ Sons, Inc.,
 
 v.
 
 North Carolina, ex rel. Maxwell, Commr. of Revenue,
 
 283 U. S., 123, 75 L. Ed., 879, 51 S. Ct., 385.
 

 The
 
 Gwin, While & Prince case, supra,
 
 is not an authority here, for the reason that it involved a tax on gross receipts, while in the instant case no tax on receipts is involved. The tax in the instant case lias been levied under the method approved in the case of
 
 American Mfg. Co.
 
 v.
 
 City of St. Louis,
 
 250 U. S., 459, 63 L. Ed., 1084, 39 S. Ct., 522.
 

 In the
 
 Gwin, White & Prince case,
 
 Mr. Justice Stone said, at page 435:
 

 “This appeal-raises the single question whether a Washington tax measured by the
 
 gross receipts
 
 of appellant from its business of marketing fruit shipped
 
 from
 
 Washington * * * is a burden on interstate and foreign commerce
 
 * * * t
 

 
 *398
 
 “ [437] For the entire service for which the compensation is paid is in aid of the shipment and sale of merchandise in that [interstate or foreign] commerce. * * *
 

 ‘ ‘ [438] Both the compensation and the tax laid upon it are measured by the amount of the commerce * * * .
 

 “ [439] Here the tax, measured by the entire volume of the interstate commerce in which appellant participates, is not apportioned to its activities within the state.” (Italics ours.)
 

 In the concurring opinion in that case by Mr. Justice Butler, with Mr. Justice McReynolds joining, it is said, at page 441:
 

 “Appellant is engaged exclusively in interstate commerce, a part of which is carried on in the state of Washington. For the privilege of doing that business the state statute purports to tax its gross earnings # # J)
 

 In the majority opinion Mr. Justice Stone also said, at page 438:
 

 “It has often been recognized that Aven interstate business must pay its way’ by bearing its share of local tax burdens,
 
 Postal Telegraph-Cable Co.
 
 v.
 
 Richmond,
 
 249 U. S., 252, 259, and that in consequence not every local tax laid upon gross receipts derived from participation in interstate commerce is forbidden.” To the same effect, see
 
 International Shoe Co.
 
 v.
 
 Shartel, Atty. Genl.,
 
 279 U. S., 429, 433, 73 L. Ed., 781, 49 S. Ct., 380.
 

 Not only was there no reversal of that line of cases which includes
 
 American Mfg. Co.
 
 v.
 
 City of St. Louis, supra,
 
 but Mr. Justice Stone, in the course of his opinion in the
 
 Gwin, White & Prince case,
 
 said, at page 440:
 

 “Neither the tax in the
 
 Ficklen case [Ficklen
 
 v.
 
 Shelby County Taxing Dist.,
 
 145 U. S., 1, 36 L. Ed., 601, 12 S. Ct., 810] nor that upheld in
 
 American Manufacturing Co.
 
 v.
 
 St. Louis, supra,
 
 was open to the objection directed here to the present tax * * * .”
 

 
 *399
 
 At page 441, Mr. Justice Stone also said:
 

 “There has been left to the states wide scope for taxation of those engaged in interstate commerce, extending to the instruments of that commerce, to net income derived from it, and to other forms of taxation not destructive of it.”
 

 As the ordinance passed upon in the
 
 American Mfg. Co. case
 
 referred to by Mr. Justice Stone involved the questions here under consideration, a brief examination of that case will be helpful here. As stated by Mr. Justice Pitney at the outset of his opinion in the
 
 American Mfg. Co.'case:
 

 1 ‘
 
 The question is whether an ordinance of the city of St. Louis levying against manufacturers, especially as against plaintiff in error, a West Virginia corporation, a tax imposed as a condition of the grant of a license to carry on a manufacturing business in that city, but the amount of which is ascertained by and proportioned to the amount of sales of the manufactured goods, whether sold within or without the state, and whether in domestic or interstate commerce, is void as amounting to a regulation of commerce among the states and thus intrenching upon the power of the national Congress under Article I, Section 8, of the Constitution, or as amounting to a taking of plaintiff’s property without due process of law, in contravention of the Fourteenth Amendment.”
 

 In discussing this tax, Mr. Justice Pitney said, at page 463:
 

 “The tax is computed according to the amount of sales of such manufactured goods, irrespective of whether they be sold within or without the state, in one kind of commerce or another; and payment of the tax is not made a condition of selling goods in interstate or in other commerce, but only of continuing the manufacture of goods in the city of St. Louis.”
 

 Mr. Justice Pitney also said, at page 463:
 

 
 *400
 
 “Tlie city might have measured such tax by a percentage upon the value, of all goods manufactured, whether they ever should come to be sold or not, and have required payment as soon as, or even before, the goods left the factory. In order to mitigate the burden, and also, perhaps, to bring merchants and manufacturers upon an equal footing in this regard, it has postponed ascertainment and payment of the tax until the manufacturer can bring [464] the goods into market. * * *
 

 ‘ ‘ In the outcome the tax is the same in amount as if it were measured by the sale value of the goods but imposed upon the completion of their manufacture. The difference is that, for reasons of practical benefit to the taxpayer, the city has postponed payment until convenient means have been furnished through the marketing of the goods.”
 

 The affirmance of the St. Louis ordinance in the
 
 American Mfg. Co. case
 
 and the observations in respect of that case by Mr. Justice Stone in the
 
 Gwin, White & Prince case
 
 and by Mr. Justice Reed in
 
 Coverdale
 
 v.
 
 Arkansas-Louisiana Pipe Line Co.,
 
 303 U. S., 604, 609, 82 L. Ed., 1043, 58 S. Ct., 736, would seem to dispose of the instant case.
 

 The case of
 
 Hans Rees’ Sons, supra,
 
 is cited by appellant as an authority for the contention that its manufacturing business in Ohio should be so dissected that not only the value of goods shipped in interstate commerce as well as sales and administrative costs should be deducted, but further that in arriving at the numerator for business done in Ohio deduction of the cost of partial manufacture outside of the state of the aluminum ingots and rods used by its Ohio plant should ibe made and only the value added by the processing at the Ohio plant should be considered.
 

 We do not think that the
 
 Hans Rees’ Sons case
 
 supports'such contentions. A tax assessed on appellant’s
 
 *401
 
 •theory would immediately destroy uniformity. The Constitution of Ohio, Section 26, Article II, requires that all laws of a general nature shall have uniform operation throughout the state. 'Wherever taxation is discussed in the cases, the necessity for uniformity is always stressed.
 

 The
 
 Hans Rees’ Sons case
 
 involved a North Carolina statute imposing an income tax. As the state attempted to allocate from 66 to 85 per cent of the corporation’s income to North Carolina, whereas the evidence showed that only 17 per cent of the corporation’s income was ■earned in North Carolina, the court held, not that the interstate commerce clause was violated, but that as the income tax was applied by the state authorities the result was so arbitrary and unreasonable as to be beyond the state’s power.
 

 Bearing in mind that the court was there dealing with .an income tax law, note the following language used by Mr. Chief Justice Hughes at page 133:
 

 “But the fact that the corporate enterprise is a unitary one, in the sense that the ultimate gain is derived from the entire business, does not mean that for the purpose of taxation the activities which are conducted in different jurisdictions are to be regarded as ‘component parts of a single unit’ so that the entire net income may be taxed in one state regardless of the ■extent to which it may be derived from the conduct of tbe enterprise in another state.”
 

 No question of income, gross or net, is involved in the instant case. No. attempt is made to tax any part of appellant’s income, either within or without this state. Neither is appellant’s income, gross or net, used •as any part of the measure of the tax. Instead of an income tax law, we are dealing in the instant case with a franchise tax imposed “for the privilege of doing-business in this state or owning or using a part or all •of its capital or property in this state or for holding a
 
 *402
 
 certificate of compliance with the laws of this state authorizing- it to do business in this state, during the calendar year in which such fee is payable.”
 

 The privilege is not confined merely to ‘ ‘ doing business.” It is a tax on purely local activities, and like the ordinance in
 
 American Mfg. Co., supra,
 
 it is measured by the business done in Ohio, to wit, the manufacturing.
 

 In the case of
 
 Coverdale
 
 v.
 
 Arkansas-Louisiana Pipe Line Co., supra,
 
 Mr. Justice Reed said:
 

 “While a privilege tax by a state for engaging in interstate business has frequently met the condemnation of this court as a regulation of commerce, privilege taxes for ‘carrying on a local business,’ even though measured by interstate business, have been sustained.
 
 American Mfg. Co.
 
 v.
 
 St. Louis,
 
 250 U. S., 459;
 
 Ficklen
 
 v.
 
 Shelby County Taxing District,
 
 145 U. S., 1; cf.
 
 Western Live Stock
 
 v.
 
 Bureau of Revenue, ante
 
 [303 U. S.], 250.”
 

 Mr. Justice Reed also said, at page 610:
 

 ‘ ‘ * * * the exemption of those engaged in interstate commerce from the taxation others bear should not be extended beyond the necessity of keeping that commerce free from interference.”
 

 In
 
 Western Live Stock
 
 v.
 
 Bureau of Revenue,
 
 303 U. S., 250, 82 L. Ed., 823, 58 S. Ct., 546, Mr. Justice Stone said, at page 254:
 

 “It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burdens even though it increases the cost of doing the business.”
 

 In the case of
 
 Hope Natural Cas Co.
 
 v.
 
 Hall, Tax Commr.,
 
 274 U. S., 284, 71 L. Ed., 1049, 47 S. Ct., 639, the Supreme Court of the United States held that natural gas produced in a state might be taxed by that state even though upon being produced it .was shipped
 
 *403
 
 and sold in interstate commerce. (See, also,
 
 Coverdale
 
 v.
 
 Arkansas-Louisiana Pipe Line Co., supra.)
 

 In the case of
 
 Hump Hairpin Mfg. Co.
 
 v.
 
 Emmerson, Secy. of State,
 
 258 U. S., 290, 66 L. Ed., 622, 42 S. Ct., 305, Mr. Justice Clarke said, at page 295:
 

 “The tax is not imposed directly upon the proceeds ■of interstate commerce and is not computed upon it. The $235,000 of interstate business of the company is ■only one of three factors used in estimating or measuring ‘the amount of the capital stock represented by property and business transacted in Illinois,’ upon which the privilege tax in dispute was computed. The •other two factors were $5,540,000 of property in Illinois and $25,000 of business stipulated as done with the residents of that state.”
 

 At page 294, Mr. Justice Clarke said:
 

 “While a state may not use its taxing power to regulate or burden interstate commerce [citations ■omitted] on the other hand it is settled that a state •excise tax which affects such commerce, not directly, but only incidentally and remotely, may be entirely "valid where it is clear that it is not imposed with the •covert purpose or with the effect of defeating federal ■constitutional rights. As coming within this latter ■description, taxes have been so repeatedly sustained where the proceeds of interstate commerce have been used as one of the elements in the process of determining the amount of a fund (not wholly derived from such commerce) to be assessed, that the principle of the ■cases so holding must be regarded as a settled exception to the general rule. [Citations omitted.] The turning point of these decisions is, whether in its incidence the tax affects interstate commerce so directly .■and immediately as to amount to a genuine and substantial regulation of, or restraint upon it, or whether it affects it only incidentally or remotely so that the tax is not in reality a burden, although in form it may ■.touch .and in fact distantly affect it. ’ ’
 

 
 *404
 
 In the case of
 
 International Shoe Co.
 
 v.
 
 Shartel, Atty. Genl., supra,
 
 Mr. Justice Stone said, at page 433:
 

 “A franchise tax imposed on a corporation, foreign or domestic, for the privilege of doing a local business, if apportioned to business done or property owned within the state, is not invalid under the commerce clause merely because a part of the property or capital included in computing the tax is used by it in interstate commerce. [Citations omitted.]”
 

 While we have carefully read and considered all of the cases cited by both appellant and appellee, it would make this opinion altogether too long to discuss each of the cases. Besides, they are merely cumulative of the cases we do discuss. But we do call especial attention to a case which summarizes the lawful methods which may be employed by a state in the exaction of franchise taxes.
 

 As pointed out in
 
 National Leather Co.
 
 v.
 
 Massachusetts,
 
 277 U. S., 413, 423, 72 L. Ed., 935, 48 S. Ct., 534, the Supreme Court of the United States has recognized three methods or bases by or upon which a state may lawfully impose upon a foreign corporation an-excise tax for the privilege of doing business within its borders, to wit:
 

 1. The method used by Ohio: The proportionate part of its total capital stock which is represented by the property located and business transacted within the state
 
 (Hump Hairpin Mfg. Co.
 
 v.
 
 Emmerson, Secy. of State, supra; American Mfg. Co.,
 
 v.
 
 City of St. Louis, supra).
 

 2. The proportionate part of the total gross receipts which are received within the state
 
 (Maine
 
 v.
 
 Grand Trunk Ry. Co.,
 
 142 U. S., 217, 35 L. Ed., 994, 12 S. Ct., 121, 163).
 

 3. The proportionate part of the total income which' is attributable to the business carried on within the state
 
 (Underwood Typewriter Co.
 
 v.
 
 Chamberlain,
 
 
 *405
 

 Treas. of State,
 
 254 U. S., 113, 120, 65 L. Ed., 165, 41 S. Ct., 45;
 
 Bass, Ratcliff & Gratton, Ltd.,
 
 v.
 
 Tax Commission,
 
 266 U. S., 271, 69 L. Ed., 282, 45 S. Ct., 82).
 

 If appellant’s contention were to be recognized, then, a large foreign corporation with a vertical organization would gain a tax advantage over a concern not so organized. For instance, wheat grown in the Dakotas is ground into flour in Minnesota, shipped to Ohio, and baked into cakes, which are then shipped from Ohio in interstate commerce. A concern with a vertical organization which ground the flour in Minnesota and baked the cakes in Ohio would thus secure a tax advantage over a concern not so organized, and especially over an Ohio corporation, which appellant says could be compelled to pay the tax according to the full value of its manufactured goods irrespective of where produced.
 

 Or, to take a more complicated illustration, based upon facts of common knowledge and of which we may take judicial notice: Ohio is a large manufacturer of shoes. One of the large shoe manufacturing companies of the country doing business in Ohio is organized, at least partially, on the vertical plan, but the majority of such concerns have no interest in the manufacture of any of their raw material. All or nearly all of the material used by Ohio shoe manufacturers comes from out of the state. For instance, sole leather comes from Massachusetts, kid leather from Pennsylvania or New Jersey, calf from Wisconsin or elsewhere (Ohio has a very large tannery), and so on all through the entire list of the many articles which the Ohio manufacturers use to make the finished product. Under appellant’s theory of finding the value of the exercise of the corporate franchise in Ohio, not only would a discrimination result but any formula so constructed for finding the value of the use of the franchise would be so cumbersome as to be impractical.
 

 
 *406
 
 That we have correctly appraised appellant’s position as one which would produce a lack of uniformity, we quote from the reply brief:
 

 “We are not here contesting the rule that a tax may be levied on or with respect to the entire selling price of goods sold in intrastate commerce in Ohio by appellant, irrespective of the fact that said goods were produced in whole or in part in another state * *
 

 If Ohio-manufactured goods are shipped to a warehouse in another state where the sale thereof would constitute doing business within such state, the commissioner’s rule eliminates the value of such goods from consideration. There is, therefore, no opportunity for double taxation, as goods which do not come to rest before sale do not lose their character of interstate business in the state of delivery.
 

 Appellant states the question before this court in the following language:
 

 “ * * * the one question that remains before this court is the question, What is
 
 ‘the value of’
 
 the manufacturing operations performed in Ohio by the appellant on goods which were sold by the appellant in •other states and shipped in interstate commerce by the appellant to customers in other states?”
 

 We cannot agree that this is the question before us. The question as we see it is: Is the decision of the Board of Tax Appeals reasonable and lawful in affirming the determination of the Tax Commissioner, which determination was arrived at by including in the numerator of the “business fraction” the value of all goods manufactured by appellant in Ohio, other than such as were sold from warehouses in other states and without making any deduction for (a) goods sold in interstate commerce, (b) raw materials shipped from outside of the state of Ohio, whether partially manufactured or not, (c) the cost of selling goods manufactured in Ohio but sold outside of Ohio, or (d) adminis
 
 *407
 
 trative expense attributable to sales made outside of Ohio of goods manufactured in Ohio?
 

 Where the goods were sold or where they were shipped is not material, as no tax is being laid upon sales wherever made. We think that appellant’s trouble comes from attempting to apply the principles laid down in the income tax case of
 
 Hans Rees’ Sons, supra,
 
 as well as the principles laid down in the case of
 
 Groin, White & Prince, supra,
 
 which was a tax measured by gross receipts. We again call attention to the approval in the last-mentioned case as well as the approval in the case of
 
 Coverdale
 
 v.
 
 Arkansas-Louisiana Pipe Line Co., supra,
 
 of the holding of the Supreme Court of the United States in the
 
 American Mfg. Co. case, supra,
 
 where a tax was upheld which was “ascertained by and proportioned to the amount of sales of the manufactured goods, whether sold within or without the state, and whether in domestic or interstate commerce.”
 

 Much of appellant’s complaint is directed to the Tax Commissioner’s Rule No. 275. The rule-making power under discussion rests with the Tax Commissioner under Sections 1464-3(13) and 1464-4, General Code. The latter section provides for a review of any rule of the Tax Commissioner by the Board of Tax Appeals, the application for which review may be filed by any person. As observed by the Board of Tax Appeals in its opinion, no application has been made for a review of the rule.
 

 In the recent case of
 
 Zangerle, Aud.,
 
 v.
 
 Evatt, Tax Commr.,
 
 139 Ohio St., 563, 41 N. E. (2d), 369, we held:
 

 ‘ ‘ Courts will not aid in making or revising rules of administrative officers, boards or commissions, being confined to deciding whether such rules are reasonable and lawful as applied to the facts of a particular justiciable case.”
 

 As the rule in question makes no discrimination, treating foreign and domestic corporations alike, and
 
 *408
 
 us we do not find that the application of the rule or the formula used by the Tax Commissioner pursuant to Section 5498, General Code, has been arbitrary or unjust or without due regard to the value of the privilege conferred, and as the method of the computation of the tax is consistent with the holdings of the Supreme Court of the United States in the cases above discussed, we are of the opinion that the decision of the Board of Tax Appeals appealed from is reasonable and lawful and should, therefore, be affirmed.
 

 Decision affirmed.
 

 Weygandt, C. J., Williams, Matthias, Hart and Zimmerman, JJ., concur.