Pfeifer, J.,
dissenting.
{¶ 58} Section 3(C), Article XII of the Ohio Constitution states, that laws may be passed providing for “[e]xcise and franchise taxes * * *; except that no excise tax shall be levied or collected upon the sale or purchase of food for human consumption off the premises where sold.” It is uncontroverted that the Commercial Activities Tax (“CAT”) at issue in this case is an excise tax. The Attorney General conceded the point at oral argument and wrote, in the tax commissioner’s brief, that “excise tax is an umbrella term that encompasses both sales and franchise taxes.” Thus, the issue before us can be simply stated: is the CAT “levied or collected upon the sale or purchase of food for human consumption off the premises where sold”? If it is, the CAT is unconstitutional; if it is not, the CAT is constitutional.
{¶ 59} Once sales crest $1 million, assuming that all credits and other allowances have been offset or otherwise adjusted, every additional dollar of sales for “food for human consumption off the premises where sold” subjects the retailer to an additional tax of .26 cents. R.C. 5751.03. It is an incontrovertible fact that if a retailer has sales over $1 million and he sells an additional 40 gallons of milk at $2.50 per gallon, for a total of $100, a tax of 26 cents is levied upon him and the state collects 26 cents. Is this not a tax “levied or collected upon the sale or purchase of food”?
{¶ 60} The fact that 26 cents per $100 is a small sum does not mean that this tax is de minimis, as the majority suggests as to the $150 flat fee. Though there are more than 11 million Ohio residents, assume that only ten million people actually live in Ohio. Further assume that they each consume exactly one gallon of milk per month, that milk costs $2.50 per gallon, and that all of the milk is purchased from a retailer with sales in excess of $1 million — that is, any milk purchased from Kroger, UDF, Giant Eagle, Meijer, Target, Whole Foods, Sam’s Club, Costco, and the like. The excise tax levied and collected by the state based on the sale of ten million gallons of milk would be $65,000. Would this not be a tax “levied or collected upon the sale or purchase of food”?
{¶ 61} The majority opinion concludes that sales are not being taxed, they are “ ‘merely’ ” being used as a “ ‘measuring stick,’ ” majority opinion at ¶ 17, quoting Aluminum Co. of Am. v. Evatt (1942), 140 Ohio St. 385, 394, 24 O.O. 405, 45 N.E.2d 118. But the quote in the majority opinion omits an important distinction between this case and Aluminum Co. The passage quoted by the majority goes *316 on to state, “The employment of various factors in determining the part of the business of a corporation (whether domestic or foreign) done in Ohio is no indication that the subjects of such factors are being taxed. Instead, they are being used merely to compose a measuring stick.” Id. The full quote and preceding text reveal that sales were used in Aluminum Co. as part of a complicated formula, which included the value of stock, the value of property owned in Ohio and outside Ohio, and sales in Ohio and outside Ohio. In Aluminum Co., sales were not used to directly determine the tax owed but were truly a mere factor in determining the franchise tax. In this case, sales are the only measure. Furthermore, Aluminum Co. did not involve a subject that was constitutionally excluded from taxation by an excise tax.
{¶ 62} The majority opinion, citing Bank One Dayton, N.A. v. Limbach (1990), 50 Ohio St.3d 163, 167, 553 N.E.2d 624, quotes this court as stating that “a franchise tax may be measured by tax-exempt income or property and still be a valid tax on the franchise and not on the property.” (Emphasis sic.) In Bank One, this court was quoting a United States Supreme Court case in which tax-exempt bonds were used as part of the net-worth valuation for computing New Jersey franchise tax. See Educational Films Corp. of Am. v. Ward (1931), 282 U.S. 379, 388, 51 S.Ct. 170, 75 L.Ed. 400. The relevance of that quote to this case is at best uncertain, but more likely, nonexistent.
{¶ 63} The majority opinion cites Fifth Third Union Trust Co. v. Peck (1954), 161 Ohio St. 169, 172, 53 O.O. 75, 118 N.E.2d 398, as holding that “the franchise-tax base could include federal securities that were exempt by federal law from taxation by the states.” The quote is a fair characterization of the holding in Fifth Third Union Trust, but it is not relevant to the issue before us. The crux of Fifth Third Union Trust is that the franchise tax can be calculated based on “ ‘the value of the issued and outstanding shares of stock’ * * * without deduction therefrom of the value of any federal securities owned by such corporation.” Id. at paragraph three of the syllabus, quoting G.C. 5498. As a practical matter, tax-exempt bonds are exempt only from certain kinds of taxation. For instance, the interest earned on tax-exempt bonds is exempt from income tax, but capital gains on tax-exempt bonds are not exempt from taxation. Furthermore, the value of the bonds is separate and distinct from their tax-exempt status. And, of course, the Fifth Third Union Trust case did not involve an express constitutional exclusion from taxation. Fifth Third Union Trust is irrelevant.
{¶ 64} The majority opinion concludes from these three cases that “the CAT is ‘measured by’ sales.” But only one of the cases it relies on uses sales as a measure, and then as part of a complicated formula in which sales are only one factor. This court has again cobbled together incongruent cases with an implausible rationale to conclude that a straightforward provision of the Constitution is *317 inapplicable to the situation before it. See Arbino v. Johnson & Johnson, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶ 173 (Pfeifer, J., dissenting). If only the Constitution of Ohio were entitled to a presumption of applicability.
{¶ 65} In its discussion of the structure of Sections 3(C) and 13, Article XII, the majority opinion states that “by permitting franchise and excise taxes but limiting only excise taxes, Section 3(C) implies that taxes on the privilege of doing business are not subject to its food-sales limitations.” (Emphasis sic.) To the contrary, it is likely that no thought was given to this distinction. 1975 Am.H.J.R. No. 15 states, as to Section 3, that “[t]he remaining portion of section 7, Article XII and sections 8, 10, and 12 of that Article are repealed and reenacted as a single new section 3.”
{¶ 66} Violating the rule of construction against reading more words into the text than are there, Bernardini v. Conneaut Area City School Dist. Bd. of Edn. (1979), 58 Ohio St.2d 1, 4, 12 O.O.3d 1, 387 N.E.2d 1222, the majority concludes that “sales or other excise taxes,” in Section 13, Article XII includes only those “excise taxes that resemble sales taxes.” (Emphasis sic.) Majority opinion at ¶ 29. That conclusion is indefensible, despite the majority’s reference to the venerable rule of ejusdem generis.
{¶ 67} In distinguishing between excise and “privilege of doing business” taxes, the majority opinion blithely ignores the fact that franchise taxes are excise taxes, as conceded by the Attorney General. Excise taxes have long been known to encompass franchise taxes. Cincinnati, Milford & Loveland Traction Co. v. State (1916), 94 Ohio St. 24, 27, 113 N.E. 654, paragraph two of the syllabus (“An excise tax is a tax assessed for some special privilege or immunity granted, * * * and in the case of a corporation, it is sometimes spoken of as a franchise tax”). There is no credible reason for the majority opinion to differentiate franchise taxes from excise taxes.
{¶ 68} Although the majority opinion’s discussion on the history of Sections 3(C) and 13 is interesting, it is also irrelevant. We only look at legislative history when a provision is ambiguous, see R.C. 149(C), which Sections 3(C) and 13 are not.
{¶ 69} This court in answering the question before us is burdened by a questionable legal principle, which requires us to presume that any statute enacted by the General Assembly is constitutional. This court has not seriously looked at this presumption in decades. The presumption has taken on a life of its own apart from whatever merits ever precipitated its institution.
{¶ 70} The presumption of constitutionality is suspect because it originates from a fallacy: that a conflict between a constitutional provision and a statute is the same as a conflict between two statutes. In State ex rel. Evans v. Dudley (1853), 1 Ohio St. 437, 441, 1853 WL 50, this court stated, “As repeals by *318 implication are not favored, the repugnancy between the provisions of two statutes must be clear, and so contrary to each other that they cannot be reconciled, in order to make the latter operate a repeal of the former. This rule is the result of a long course of decisions, and we know of no reason why it does not equally apply, when the repugnancy is alleged to exist, between a constitutional provision and a legislative enactment.” See also Cass v. Dillon (1853), 2 Ohio St. 607, 611, 1853 WL 129, quoting Dodge v. Gridley (1840), 10 Ohio 173, 178, 1840 WL 34 (“it was held, that ‘when two affirmative statutes exist, one is not to be construed to repeal the other by implication, unless they can be reconciled by no mode of interpretation.’ In the light of this rule, then, let us examine the provisions of the constitution that are said to be repugnant to the continued existence of the law in question” [emphasis sic]). Every case since 1853 that has relied on the presumption of constitutionality relates back to these cases and therefore relies on the faulty premise that a constitutional provision is the same as a statute for purposes of determining which governs a particular issue.
{¶ 71} Another basic problem with the presumption of constitutionality is that the presumption itself rests on another presumption: “that the Legislature acted with due respect to the Constitution and enacted the law in the belief that it was within legislative power.” State ex rel. Weinberger v. Miller (1912), 87 Ohio St. 12, 52, 99 N.E. 1078 (Davis, C.J., dissenting). See State ex rel. Atty. Gen. v. Cincinnati (1870), 20 Ohio St. 18, 33-34, 1870 WL 2, in which this court explained that the presumption of constitutionality is based on “the presumption that the legislative majority which enacted the statute in question, did so after full and careful investigation, and in the full conviction that what they were doing was within the constitutional grant of legislative power.” This court went on to say that “this presumption may not be a very satisfactory one: and, perhaps, sometimes members of the legislative department of the government, instead of examining for themselves whether proposed enactments are warranted by the constitution which they are sworn to support, ignore this duty, with a view to throw it over upon the judiciary in the first instance.” (Emphasis sic.) Id. at 34, 1870 WL 2.
{¶ 72} The doubts expressed by Chief Justice Davis in Weinberger and Chief Justice Brinkerhoff in Atty. Gen. are well placed. Even the most casual observer of the General Assembly is aware that members do not always carefully consider the constitutionality of the legislation they vote for or against. They do not thereby abuse their trust or duty, but most members are not lawyers, are not steeped in constitutional law, and are not capable of discerning the often fine lines that separate the unconstitutional from the constitutional. Frequently members state that they don’t have to consider whether a given law to be enacted is constitutional because this court will ultimately make that determination. It has *319 and it will; to do otherwise is an abdication of our duty. See Atty. Gen., 20 Ohio St. at 33, 1870 WL 2.
{¶ 73} “It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past.” Holmes, The Path of the Law (1897), 10 Harv.L.Rev. 457, 469. The presumption of constitutionality is based on a fallacy and an unsound presumption, and I would abrogate it.
{¶ 74} Constitutional provisions are not the kin of statutes; they are the paramount law of Ohio. Constitutional provisions are superior to statutes because they derive from the people, the fount of all political power, whereas statutes derive from the General Assembly, which has only the authority delegated to it by the people. Cincinnati, Wilmington & Zanesville RR. Co. v. Clinton Cty. Commrs. (1852), 1 Ohio St. 77, 85, 1852 WL 11 (“all political power resides with the people”); Federalist No. 78. See Marbury v. Madison (1803), 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (“Certainly all those who have framed written constitutions contemplate them as forming the fundamental and paramount law of the nation, and consequently the theory of every such government must be, that an act of the legislature, repugnant to the constitution, is void”).
{¶ 75} Given the obvious supremacy of the Constitution, a better rule of construction would be to resolve all doubts in favor of the applicability of the Constitution.
{¶ 76} The historical presumption of constitutionality is backwards. The bottom line is that courts are the ultimate arbiters of what is constitutional, and have been since 1803, and we ought not to be saddled with a presumption that restricts our ability to declare a suspect statute unconstitutional. Marbury, 5 U.S. (1 Cranch) at 177, 2 L.Ed. 60 (“an act of the legislature, repugnant to the constitution, is void”). See Cincinnati, Wilmington & Zanesville RR., 1 Ohio St. at 81, 1852 WL 11 (“It seems now, however, to be generally, if not universally conceded, that it is the right, and consequently the duty of the judicial tribunals, to determine, whether a legislative act drawn in question in a suit pending before them, is opposed to the constitution of the United States, or of this State, and if so found, to treat it as a nullity”).
{¶ 77} Furthermore, some laws are “presumptively invalid.” See, e.g., R.A.V. v. St. Paul (1992), 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (content-based regulation restricting free speech); Nixon v. Shrink Missouri Govt. PAC (2000), 528 U.S. 377, 400, 120 S.Ct. 897, 145 L.Ed.2d 886 (Breyer, J., concurring) (laws subject to strict scrutiny bear a strong presumption against constitutionality); Bantam Books, Inc. v. Sullivan (1963), 372 U.S. 58, 70, 83 S.Ct. 631, 9 *320 L.Ed.2d 584 (“Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity”).
{¶ 78} Abrogating the presumption of constitutionality would not lead to chaos. This court would not presume that statutes are unconstitutional. This court would not invalidate all challenged statutes if the presumption of constitutionality were to disappear. See State ex rel. Bishop v. Mt. Orab Village School Dist. Bd. of Edn. (1942), 139 Ohio St. 427, 22 O.O. 494, 40 N.E.2d 913 (statute was upheld as constitutional even though presumption of constitutionality was not mentioned). But this court would be less likely to sanction suspect statutes, like the one before us today, if the presumption were not in place. See Cass, 2 Ohio St. at 618, 1853 WL 129 (“while we should be careful not to extend the powers of government by far fetched implications, we should be equally careful not to defeat the purpose of the constitution by a narrow and unreasonable construction”).
{¶ 79} Even assuming the validity of the presumption of constitutionality, it is clear beyond a reasonable doubt that the CAT violates Section 3, Article XII of the Ohio Constitution. See State ex rel. Dickman v. Defenbacher (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, syllabus (“An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it to be unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible”).
{¶ 80} Referring to Dickman with approval, this court, in State ex rel. Jackman v. Cuyahoga Cty. Court of Common Pleas (1967), 9 Ohio St.2d 159, 162, 38 O.O.2d 404, 224 N.E.2d 906, stated, “The power to legislate for all the requirements of civil government is the rule, while a restriction upon the exercise of that power in a particular case is the exception.” In this case, the restriction, although it may be an exception, is clearly enunciated in Section 3, Article XII. Today, a majority of this court has defeated the purpose of the constitution, which clearly intends that food, a paramount necessity for over 11 million Ohioans, not be subject to an excise tax. See Castleberry v. Evatt (1946), 147 Ohio St. 30, 33, 33 O.O. 197, 67 N.E.2d 861 (“food is the greatest necessity of life. A special tax on food is the most unjust and obnoxious that could be levied”). The majority accomplishes its end by narrowly and unreasonably construing numerous cases and by ignoring the obvious purpose behind a constitutional provision that states that “no excise tax shall be levied or collected upon the sale or purchase of food for human consumption off the premises where sold.” Instead of merely presuming that the CAT is constitutional, this court has gone out of its way to contort the mainly irrelevant case law it cites to support its conclusion.
{¶ 81} In Cincinnati, Wilmington & Zanesville, 1 Ohio St. at 86, 1852 WL 11, we wrote that “it is always legitimate to insist that any legislative enactment, *321 drawn in question, is void, either, because it does not fall within the general grant of power to that body, or because it is expressly prohibited by some provision of the constitution.” In Fletcher v. Peck (1810), 10 U.S. (6 Cranch) 87, 128, 3 L.Ed. 162, Chief Justice Marshall wrote that “it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other.” Implication and conjecture are the building blocks of the majority opinion. Clear and strong conviction that an excise tax collected by the state based on the sale of food is prohibited by Section 3, Article XII of the Ohio Constitution flows naturally from any fan-reading of its provisions. I dissent.
Chester, Willcox & Saxbe, L.L.P., Gerhardt A. Gosnell II, Charles R. Saxbe, and Donald C. Brey, for appellees.
Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, Stephen P. Carney and Elisabeth A. Long, Deputy Solicitors, and Lawrence D. Pratt and Julie Brigner, Assistant Attorneys General, for appellant.
Maurice Thompson and Joseph Henchman, urging affirmance for amici curiae Buckeye Institute for Public Policy Solutions and Tax Foundation.
Hahn, Loeser & Parks, L.L.P., and Stephen Chappelear, urging affirmance for amicus curiae Ohio Restaurant Association.
Reed Smith, L.L.P., Sara Lima, and Kyle Sollie, urging affirmance for amicus curiae Tyson Sales & Distribution, Inc.
Buckley King, L.P.A., Robert J. Walter, and James E. Melle, urging reversal for amici curiae Ohio AFL-CIO, American Federation of State, County & Municipal Employees Ohio Council 8, Communications Workers of America District 4, Fraternal Order of Police of Ohio, Inc., Ohio Association of Professional Firefighters, Ohio Association of Public School Employees (OAPSE)/AFSCME Local 4, Ohio Education Association, Ohio Federation of Teachers, and Service Employees International Union District 1199.
Bricker & Eckler, L.L.P., Kurtis A. Tunnell, Mark A. Engel, and Anne Marie Sferra, urging reversal for amici curiae Ohio Manufacturers’ Association, Ohio State Medical Association, Ohio Society of Certified Public Accountants, Ohio Dental Association, and Ohio Chemistry Technology Council.
Squire, Sanders & Dempsey, L.L.P., Pierre H. Bergeron, and Thomas D. Amrine, urging reversal for amici curiae Ohio Legal Assistance Foundation, Coalition on Homelessness & Housing in Ohio, Corporation for Ohio Appalachian *322 Development, Ohio Association of Free Clinics, and Ohio Council of Behavioral Health & Family Services Providers.
McDonald Hopkins, L.L.C., Richard C. Farrin, and Thomas M. Zaino; and Porter, Wright, Morris & Arthur, L.L.P., and Kathleen M. Trafford, urging reversal for amicus curiae Ohio Business Roundtable.
Schottenstein, Zox & Dunn Co., L.P.A., Stephen L. Byron, Rebecca K. Schaltenbrand, and Stephen J. Smith; and John Gotherman, urging reversal for amici curiae Ohio Municipal League, County Commissioners Association of Ohio, Ohio Township Association, and Buckeye State Sheriffs’ Association.
Taft, Stettinius & Hollister, L.L.P., Fred J. Livingstone, J. Donald Mottley, and Judson D. Stelter, urging reversal for amici curiae Ohio School Boards Association, Buckeye Association of School Administrators, and Ohio Association of School Business Officials.
Shirley Sicilian and Sheldon H. Laskin, urging reversal for amicus curiae Multistate Tax Commission.