AMERICAN MANUFACTURING COMPANY *v.* CITY OF ST. LOUIS.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 365.    Argued April 30, 1919.—Decided June 9, 1919.

The question whether a state law or tax deprives a party of constitutional rights depends upon its practical operation and effect. P. 462.

An ordinance conditioning the right to manufacture goods within a city upon the payment of a license tax computed upon the amount of the sales of the goods so manufactured, *held*, a tax upon the business of manufacture within the city, and not a tax upon the sales. P. 463.

Such a tax when computed upon the sales of goods manufactured in the city under the license, but removed, and afterwards sold, beyond the State, does not impose a direct burden on interstate commerce or, when the manufacturer is a sister-state corporation, deprive it of property without due process. P. 464.

198 S. W. Rep. 1183, affirmed.

THE case is stated in the opinion.

*Mr. S. Mayner Wallace*, with whom *Mr. Shepard Barclay* was on the brief, for plaintiff in error.

*Mr. Everett Paul Griffin*, with whom *Mr. Charles H. Dawes* was on the brief, for defendant in error.

.MR. JUSTICE PITNEY delivered the opinion of the court.

The question is whether an ordinance of the City of St. Louis levying against manufacturers, especially as against plaintiff in error, a West Virginia corporation, a tax imposed as a condition of the grant of a license to carry on a manufacturing business in that city, but the amount of which is ascertained by and proportioned to the amount of sales of the manufactured goods, whether sold within or without the State, and whether in domestic or interstate commerce, is void as amounting to a regulation of commerce among the States and thus entrenching upon the power of the national Congress under Art. I, § 8, of the Constitution, or as amounting to a taking of plaintiff's property without due process of law, in contravention of the Fourteenth Amendment.

A statute of the State (Rev. Stats. Mo. 1909, § 9857) authorizes cities to license, tax and regulate for local purposes the occupations of merchants and manufacturers and to graduate the amount of annual license imposed upon them in proportion to the sales made by such merchant or manufacturer during the year next preceding any fixed date. Pursuant to this authority the city, by the ordinance in question, in addition to an *ad valorem* property tax, requires every manufacturer in the city before doing or offering to do business as such to take out a license, and at a specified time to render a sworn statement of the aggregate amount of sales made by him during

the year next preceding the first Monday of June, and within a short time thereafter to pay a license tax of $1 on each $1,000 of sales made. Failure or refusal to deliver the required statement or to pay the license tax within the time specified is made a misdemeanor punishable by fine and the imposition of a double tax; making a false statement under oath is made punishable by forfeiture of the license in addition to a fine.

In a previous case (*Manufacturing Co.* v. *St. Louis*, 238 Missouri, 267, 278), the Supreme Court of the State held that this tax did not apply to sales made of goods shipped from plaintiff's factory in the State of New York directly to purchasers in Texas, but only to sales from its St. Louis factory.

In the present case, which was a suit brought in a state court by plaintiff in error against the city to recover so much of a disputed tax as was measured by sales of goods manufactured by plaintiff in the city, afterwards removed to storage warehouses outside of the State, and later sold from these warehouses to purchasers in States other than Missouri, the trial court at first gave judgment in favor of plaintiff on this item, and this having been reversed by the Supreme Court of the State (270 Missouri, 40), a new trial resulting in favor of the city, and the second judgment having been affirmed (198 S. W. Rep. 1183), the case comes here on writ of error.

In construing the statute and ordinance and defining the nature and effect of the tax, the Supreme Court expressed itself as follows (p. 45):

"It is not disputed that under the broad provision of its charter the city of St. Louis has the power to license and tax manufacturers within its limits; nor that the power includes the right to impose a tax upon the transaction of their business. Adopting substantially the definition we have quoted from the statute, it has, by ordinance, forbidden them to pursue their business within the city

without procuring a license, and has prescribed the additional tax they shall pay for that purpose, which is graduated to accord with the amount of business they shall carry to the point of realizing the profit or liquidating the loss by the sale of the product of their work. They may only buy and sell in pursuance of their business as manufacturers. That his right to pursue this business is the one thing he receives as compensation for this tax is evident; and that the method of fixing its amount by the amount that he realizes from the licensed activity is a just and equitable one is not disputed; nor is the inherent justice and fairness of postponing the payment until the realization of the result of the work. The tax is none the less a tax upon the business of manufacture pursued in the city of St. Louis under the protection of the laws of this State and the ordinances of the city. . . . We hold that the tax in question is a tax upon the privilege of pursuing the business of manufacturing these goods in the city of St. Louis; that when the goods were manufactured the obligation accrued to pay the amount of the tax represented by their production when it should be liquidated by their sale by the manufacturer; that their removal from the city of St. Louis and storage elsewhere, whether within or without the State, worked no change in this obligation; that their sale by the respondent wherever they may have been stored at the time, whether it was done through its home office in New York or the office of its factory in St. Louis, should have been reported in its return to the license collector of the city of St. Louis and the amount included in fixing the amount payable on account of its license tax."

As a matter of construction, this, upon familiar principles, is conclusive upon us. But, as has been held very often, the question whether a state law or a tax imposed thereunder deprives a party of rights secured by the federal Constitution depends not upon the form of the act, nor

upon how it is construed or characterized by the state court, but upon its practical operation and effect. *St. Louis Southwestern Ry. Co.* v. *Arkansas,* 235 U. S. 350, 362; *Mountain Timber Co.* v. *Washington,* 243 U. S. 219, 237; *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, 294.

The admitted facts show that the operation and effect of the taxing scheme now under consideration are correctly described in what we have quoted from the opinion of the state court. No tax has been or is to be imposed upon any sales of goods by plaintiff in error except goods manufactured by it in St. Louis under a license conditioned for the payment of a tax upon the amount of the sales when the goods should come to be sold. The tax is computed according to the amount of the sales of such manufactured goods, irrespective of whether they be sold within or without the State, in one kind of commerce or another; and payment of the tax is not made a condition of selling goods in interstate or in other commerce, but only of continuing the manufacture of goods in the City of St. Louis.

There is no doubt of the power of the State, or of the city acting under its authority, to impose a license tax in the nature of an excise upon the conduct of a manufacturing business in the city. Unless some particular interference with federal right be shown, the States are free to lay privilege and occupation taxes. *Clark* v. *Titusville,* 184 U. S. 329; *St. Louis* v. *United Railways Co.,* 210 U. S. 266, 276.

The city might have measured such tax by a percentage upon the value of all goods manufactured, whether they ever should come to be sold or not, and have required payment as soon as, or even before, the goods left the factory. In order to mitigate the burden, and also, perhaps, to bring merchants and manufacturers upon an equal footing in this regard, it has postponed ascertainment and payment of the tax until the manufacturer can bring

the goods into market. A somewhat similar method of postponing payment has been pursued for many years by the Federal Government with respect to the internal revenue tax upon distilled spirits. Rev. Stats., §§ 3251, 3253; Act of August 27, 1894, c. 349, § 48, 28 Stat. 509, 563.

To the suggestion that the tax burdens the mercantile rather than the manufacturing business, because it would be possible for one to manufacture goods to an unlimited extent and pay no tax unless they were sold, or to sell goods and be required to pay the tax although they were not manufactured by the seller, it is sufficient to say—answering the second point first—(a) that, according to the state law as laid down by the court of last resort in this case, a manufacturer has no right to sell goods except those of his own manufacture; and (b) it is not to be supposed that, for the purpose of evading a tax payable only upon the sale of his goods, a manufacturer would pursue the ruinous policy of making goods and locking them up permanently in warehouses. In the outcome the tax is the same in amount as if it were measured by the sale value of the goods but imposed upon the completion of their manufacture. The difference is that, for reasons of practical benefit to the taxpayer, the city has postponed payment until convenient means have been furnished through the marketing of the goods.

In our opinion, the operation and effect of the taxing ordinance are to impose a legitimate burden upon the business of carrying on the manufacture of goods in the city; it produces no direct burden on commerce in the goods manufactured, whether domestic or interstate, and only the same kind of incidental and indirect effect as that which results from the payment of property taxes or any other and general contribution to the cost of government. Therefore, it does not amount to a regulation of interstate commerce. And, for like reasons, it has not the effect of imposing a tax upon the property or the busi-

ness transactions of plaintiff in error outside of the State of Missouri, and hence does not deprive plaintiff in error of its property without due process of law.

Our recent decisions cited in opposition to this view, *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, 297; *Looney* v. *Crane Co.,* 245 U. S. 178, 188, and other cases of the same kinds referred to therein, are so obviously distinguishable that particular analysis is unnecessary. .

*Judgment affirmed.*