Turner, J.
 

 For the privileges set forth in Section 5495, G-eneral Code, the state charges a fee against all corporations doing business in Ohio on the value or proportionate value of the issued and outstanding shares of stock of each such corporation. (Section 5499, General Code.) The amount of this fee or tax is based on the proportion of the corporation’s property held or used in Ohio and of business done in Ohio by such corporation (domestic or foreign) during the preceding year. This fee is computed under Section 5498, General Code, by first determining the value of the issued and outstanding shares of stock of the corporation. Thereafter a base is determined by dividing the value of the issued and outstanding shares into two equal parts. One part is then multiplied by a fraction whose numerator is the fair value of'all the corporation’s property owned or used by it in Ohio and whose denominator is the fair value of all its property wheresoever situated. The other part is multiplied by a fraction whose numerator is the value of the business done by the corporation in this state during the year preceding the date of the commencement of its current annual accounting period and whose denominator is the total value of its business during such year, wherever transacted. The Tax Commissioner then certifies to the
 
 *65
 
 Auditor of State the base determined by him through adding the two figures thus obtained. The auditor makes a charge of one-tenth of one per cent upon the base so certified and in turn certifies the amount of the fee to the Treasurer of State. The treasurer then mails to the corporation a statement showing the value or the proportionate value of the shares of stock upon which such fee is charged and the amount of the fee. (Section 5499, General Code.)
 

 This case involves only the method used by the Tax Commissioner to the extent approved by the Board of Tax Appeals for ascertaining the numerator of the business-done part of the formula.
 

 As stated by appellant, a foreign corporation doing business in Ohio, “there is no disagreement between the parties on this appeal as to the total net worth of International Harvester Company to which the Ohio allocation ratio is applied for each year, the amount of appellant’s property in Ohio and its total property, and its total business for each of the years involved.”
 

 As stated by the Board of Tax Appeals in its journal entry, ‘ ‘ consequently, the only matter in dispute is the numerator of the business fraction, which represents the value of the business done by appellant in this state during each of the years involved.”
 

 The Tax Commissioner treated the manufacturing-done at appellant’s factories in Ohio as business done in Ohio. As indicative of the value of such business done, the Tax Commissioner used the sales value of all appellant’s Ohio manufactured products sold in the previous year whether in intrastate or interstate commerce.
 

 As the Board of Tax Appeals reduced the Tax Commissioner’s use of appellant’s Ohio factories’ production by 62 per cent on account of manufactured products shipped from appellant’s Ohio factories in each preceding year to warehouses in other states, appel
 
 *66
 
 iant’s complaint is now reduced to the use of 38 per cent of the sales value of the preceding year of products manufactured at Springfield and shipped by the Springfield works- during a preceding year direct to buyers in other states, as indicative of the value of business done at appellant’s Ohio factories.
 

 It is our opinion that the method followed by the Tax Commissioner and approved by the Board of Tax Appeals, in ascertaining the amount of business done in Ohio, which is all that is in question in the instant case, follows the procedure approved by the Supreme Court of the United States in the case of
 
 American Mfg. Co. v. City of St. Louis,
 
 250 U. S., 459, 63 L. Ed., 1084, 39 S. Ct., 522, as stated by Mr. Justice Pitney at page 460 of that case:
 

 “The question is whether an ordinance of the city of St. Louis, levying against manufacturers, especially as against plaintiff in error, a West Virginia corporation, a tax imposed as a condition of the grant of a license to carry on a manufacturing business in that city, but the amount of which is ascertained by and proportioned to the amount of sales of the manufactured goods, whether sold within or without the state, and whether in domestic or interstate commerce, is void as amounting to a regulation of commerce among the states and thus intrenching upon the power of the national Congress under Art. I, §8, of the Constitution, or as amounting to a taking of plaintiff’s property without due process of law, in contravention of the 14th Amendment. ’ ’
 

 In commenting on the
 
 American Mfg. Co.
 
 case, Mr. Justice Roberts said at page 312 in the case of
 
 J. D. Adams Mfg. Co.
 
 v.
 
 Storen,
 
 304 U. S., 307, 82 L. Ed., 1365, 58 S. Ct., 913, 117 A. L. R., 429: “The tax on the privilege for the ensuing year was measured by a percentage of the past year’s sales.” This is the method followed in the instant case. See, also,
 
 Aponaug
 
 
 *67
 

 Mfg. Co.
 
 v.
 
 Stone,
 
 314 U. S., 577, 86 L. Ed., 467, 62 S. Ct., 131, affirming the case which arose below in
 
 Aponaug Mfg. Co.
 
 v.
 
 State Tax Commission,
 
 190 Miss., 805, 1 So. (2d), 763; and
 
 C. H. Musselman Co.
 
 v.
 
 Alderson, Tax Commr.,
 
 315 U. S., 779, 86 L. Ed., 1187, 62 S. Ct., 580, both decided on authority of
 
 American Mfg. Co.
 
 v.
 
 City of St. Louis, supra.
 

 In coming to its decision in the instant case the Board of Tax Appeals followed the holding of this court in the case of
 
 Aluminum Co. of America
 
 v.
 
 Evatt, Tax Commr.,
 
 140 Ohio St., 385, 45 N. E. (2d), 118, in which we held:
 

 “1. The franchise tax levied pursuant to Sections 5498 and 5499, General Code, on a foreign corporation is for the privilege of doing business in this state or owning a part or all of its capital or property in this state or for holding a certificate of compliance with the laws of this state authorizing it to do business in this state. (Section 5495, General Code.)
 

 “2. ‘Doing business’ in this state is only a part of the privilege taxed under Section 5495, General Code. The tax also covers the privilege of owning a part or all of the foreign corporation’s capital or property in this state as well as the privilege of holding a certificate of compliance with the laws of this state.
 

 “3. The Ohio Franchise Tax (Section 5495
 
 et seq.,
 
 General Code) is not a tax upon commerce, state or interstate. It is not a tax upon income, receipts or sales.
 

 “4. The manufacturing operations within this state by a foreign corporation constitute business done by such corporation in this state within the meaning of Section 5498, General Code.
 

 “5. Tax Commissioner’s Rule No. 275 is not unreasonable or unlawful in its application in the instant case. Such rule is favorable to the taxpayer by eliminating from the base upon which the franchise tax is computed goods manufactured in Ohio and sold from
 
 *68
 
 warehouses outside of this state. Such rule eliminates the possibility of double taxation on account of ‘business done’ by the corporation in the state where sales of Ohio-manufactured goods are made from warehouses in such other state.
 

 “6. In computing the numerator of the ‘business done’ fraction under Section 5498, General Code, the Tax Commissioner may not be required to deduct therefrom (a) goods sold in interstate commerce, (b) raw materials shipped from outside the state, whether partially fabricated or not, (c) the cost of selling goods manufactured in Ohio but sold outside of Ohio, or (d) administrative expense attributable to sales made outside of Ohio of goods manufactured in Ohio.
 

 “7. A franchise tax computed according to the amount of sales of goods manufactured in Ohio, irrespective of whether such goods are sold within or without the state, in intrastate or interstate commerce, where the payment of the tax is not made a condition of the selling of the goods in interstate or other commerce, but only of continuing in the manufacture of goods within the state, violates neither the commerce clause, Section 8, Article I of the Constitution of the United States, nor the 14th Amendment thereto.
 
 (American Mfg. Co.
 
 v.
 
 City of St. Louis,
 
 250 U. S., 459, followed.)
 

 “8. While a state may not use its taxing power to regulate or burden interstate commerce, on the other hand it is settled by the decisions of the Supreme Court of the United States that a state excise tax which affects such commerce, not directly, but only incidentally and remotely, may be entirely valid where it is clear that it is not imposed with the covert purpose or with the effect of defeating federal constitutional rights.
 
 (Hump Hairpin Mfg. Co.
 
 v.
 
 Emmerson, Secy. of State,
 
 258 U. S., 290, followed.)
 

 “9. A franchise tax imposed on a corporation, for
 
 *69
 
 eign or domestic, for the privilege of doing local business, if apportioned to the business done or property owned within the state, is not invalid under the commerce clause of the federal Constitution merely because a part of the property or capital included in computing the tax is used by the corporation in interstate commerce, or because a part of the manufactured product is thereafter sold and shipped in interstate commerce.
 
 (International Shoe Co.
 
 v.
 
 Shartel, Atty. Genl.,
 
 279 U. S., 429, and
 
 Hope Natural Gas Co.
 
 v.
 
 Hall, Tax Commr.,
 
 274 U. S., 284, followed.)
 

 “10. The validity of an excise tax upon a foreign corporation depends upon its operating incidence. The application of Section 5498, General Code, and Tax Commissioner’s Rule No. 275 in computing appellant’s franchise tax for the year 1939 produced no unlawful result under the evidence in this case.”
 

 Appellant in brief and argument attempts to treat the Ohio franchise tax as a sales tax, an income tax ora gross receipts tax, which it is not.
 

 It is the contention of appellant that no portion of the value of the products manufactured in Ohio which were sold in interstate commerce may be considered as a measure of the business done in Ohio. In other words, if all the products of a manufacturing plant in Ohio were sold in interstate commerce in the preceding year it would then follow that the corporation had done no business in Ohio in such factory.
 

 In substance appellant contends that because some of the raw materials used by appellant in its Ohio manufacturing processes during a preceding year came into the state in interstate commerce and some of the finished products of the factories left the state in interstate commerce during a preceding year, the use of the sales value of the finished products of Ohio manufacture as an indication of the value of the business done in Ohio for the preceding year results in lay
 
 *70
 
 ing an unconstitutional burden on interstate commerce and in taxing property and business of tbe appellant outside Ohio in violation of the due process clause of the United States Constitution.
 

 In support of its contentions appellant cites cases decided by the Supreme Court of the United States involving taxes on income and on gross receipts. As these cases have been commented on in the case of
 
 Aluminum Co. of America
 
 v.
 
 Evatt, Tax Commr., supra,
 
 we shall not again review those cases here.
 

 As to the case of
 
 International Harvester Co.
 
 v.
 
 Department of Treasury,
 
 322 U. S., 340, 88 L. Ed., 1313, 64 S. Ct., 1019, cited by appellant, it is only necessary to quote the opening sentence of Mr. Justice Douglas’ opinion, to wit, “This case raises questions concerning the constitutionality of the Indiana Gross Income Tax Act of 1933 * * * as construed and applied to certain business transactions of appellant companies.” We find nothing in that case which would tend to indicate the invalidity of our statutory method of the computation of the proportionate value of the issued and outstanding shares of a corporation doing business in Ohio.
 

 This court is committed to the proposition that the operation of a factory in Ohio constitutes business done in Ohio regardless of where the products of such factory are sold.
 

 We are also committed to the proposition that the volume of sales might be used as indicative of the volume of the manufacturing carried on in such factories and as a proper element of comparison with the volume, similarly computed, of total business done by the corporation in and out of the state.
 

 The present method of determining part of the base upon which to compute the fee, known as the franchise tax, by measuring the volume of business done in Ohio by the value of the sales of the Ohio manufactured
 
 *71
 
 products and comparing such, result with the total amount of business wherever done computed by the same method, has been in use in Ohio for many years.
 

 On April 15, 1915, the writer, as Attorney General, issued opinion No. 246 (Vol. 1, Opinions of Attorney General [1915], 460) to the Tax Commission of Ohio in the course of which it was said (page 462):
 

 “I am of the opinion that the operation of factories in Ohio by a foreign corporation constitutes ‘doing business’ in Ohio regardless of where the products of such factory are sold. * * * [Citing cases.]
 

 “I am of the opinion that under the provisions of Section 5502, General Code, it is the duty of the commission to select some factor or criterion which will represent the volume of the business done in Ohio as compared with the volume of the business of the company as a whole; and that the business being manufacturing, and all manufacturing being for the purpose of sale, the sales of the products of the factories may be used as such a measure of the volume of the manufacturing business. When so used the sales do not represent commerce at all, but manufacture, and may just as appropriately be used for this purpose as any other criterion, such as the total value of the manufactured articles.”
 

 The present formula was spelled out by the General Assembly in 113 Ohio Laws, 637, passed April 6, 1929. Minor amendments were made in 114 Ohio Laws, 762, and 115 Ohio Laws, 589, which latter law became effective July 18, 1933, and is still in force as Section-5498, General Code.
 

 Section 5495 of the General Code of Ohio defines the purpose for which the franchise tax is levied on both domestic and foreign corporations. As to foreign corporations it is provided therein: “* * * and the tax provided by this act for foreign corporations- shall be the fee charged against each corporation organized for
 
 *72
 
 profit under the laws of any state or country other than Ohio, except as provided herein, for the privilege of doing business in this state or owning or using a part or all of its capital or property in this state or for holding a certificate of compliance with the laws of this state authorizing it to do business in this state, during the calendar year in which such fee is payable.”
 

 Section 5499, General Code, charges a fee of one-tenth of one per cent of the value or the proportionate value of the shares of stock upon which such fee is charged.
 

 Section 5498, General Code, provides the means for determining the value of the outstanding shares of stock of a corporation (domestic or foreign) and prescribes the formula for determining the base upon which the fee provided for in Section 5499 of the General Code shall be computed, to wit: “* * * The commission shall then determine as follows the base upon which the fee provided for in Section 5499 of the General Code shall be computed. Divide into two equal parts the value as above determined of the issued and outstanding shares of stock of each corporation filing such report. Take one part and multiply by a fraction whose numerator is the fair value of all the corporation’s property owned or used by it in Ohio and whose denominator is the fair value of all its property wheresoever situated in each case eliminating any item of good will [It is agreed that the computation of the foregoing fraction is correct. The dispute is as to the computation under the second part which follows] ; take the other part and multiply by a fraction whose numerator is the value of the business done by the corporation in this state during the year preceding the date of the commencement of its current annual accounting period and whose denominator is the total value of its business during said year wherever transacted.”
 

 
 *73
 
 Section 5497, General Code, requires every corporation doing business in Ohio to submit to the Department of Taxation, certain information including:
 

 “7.
 
 The amount of its capital, surplus, whether earned or unearned, undivided profits and reserves, as shown by the books of the corporation. A complete schedule shall be filed with the report showing the object and amount of each such reserve; also there shall be filed with said report a schedule of the annual rates of depreciation and depletion;
 

 “8. The location and value of the property owned or used by the corporation as shown on its books, both within and without the state, given separately; and the total amount of business done and the amount of business done within the state by said corporation during its preceding annual accounting period, given separately. Business done within this state by domestic corporations shall include all business except extra-state business.”
 

 Section 5500, General Code, provides for a review of the correctness of the determination of the value of the stock, or the proportion of such value, as made by the Tax Commissioner under the provisions of the act which we have been discussing. In reading these sections of the statute the following provision of Section 1464, General Code, should be kept in mind:
 

 “Whenever in any law of this state, in effect at, or after the time the Tax Commission of Ohio and the offices of commissioners or members of said commission shall, by the provisions of this act, be abolished, the term ‘Tax Commission of Ohio,’ ‘commission,’ ‘commissioner’ or ‘member,’ meaning the Tax Commission of Ohio or the offices of commissioners ox-members of said commission, which by this act shall have been abolished, is used, such term shall be construed as referring to the Departmexxt of Taxation, the Tax Commissioner, the Board of Tax Appeals, or the
 
 *74
 
 members of said Board of Tax Appeals, as the provisions of this act may require.”
 

 Appellant also complains of the failure of the Board of Tax Appeals to make a deduction for the amount of goods sold in a preceding year by branches of the company in Ohio when the goods were shipped direct from factories or transfer houses of the company outside Ohio to buyers in Ohio.
 

 We are unable to find any evidence in the record of the
 
 amount
 
 of any such shipments. The record does contain the following stipulation:
 

 “6. On the sale of goods by a branch, the branch either delivered the article from its own sto.ck in its warehouse at the branch house, or directed that the goods be shipped by the factory direct either to the dealer or, in a very small percentage of cases, to the user.”
 

 The record also contains the following stipulation: “All sales proceeds, both of cash and of notes, are received by the selling branches and any notes received as part payment are held at the selling branches and interest and principal collected there.”
 

 The stipulation of facts discloses, for the several years, the amount of
 
 sales by Ohio branches
 
 to Ohio buyers, of goods manufactured outside Ohio. In its journal entry the board said: “All orders had to be approved by the respective branches, which collected the purchase price of such sales and deposited the money in local banks, which was withdrawable only by the general office in Chicago. Appellant’s branches would send shipping orders to the factories to ship goods to the branches for storage in warehouses at the branches until they could sell them, or to ship goods direct to the dealers, and in a few instances, direct to the users.” Assuming that such distinction in computing the amount of business done in a preceding year is material and assuming further that the record
 
 *75
 
 discloses that “in a few instances” shipments from outside the state were shipped direct to users in Ohio on orders from branches in Ohio, we adopt the following reasoning of the board and hold that the decision of the Board of Tax Appeals was not unreasonable or unlawful in respect thereof, to wit:
 

 “All of the goods which were manufactured oat of the state and sold to Ohio customers were shipped on orders received from appellant’s branches which .it maintained in Ohio, and the board finds that the activities of such branches in this state and their authority in connection therewith constitute doing business within the state regardless of whether such goods were 'shipped to warehouses of the appellant within the state or directly to customers in Ohio on orders from the branches. In the case of
 
 International Harvester Co. of America
 
 v.
 
 Kentucky,
 
 234 U. S., 579, 58 L. Ed., 1479, the company claimed that so far as the company’s activities in Kentucky were concerned, it was engaged solely in interstate commerce and was, therefore, not subject to the jurisdiction of the state. The court held, however, that the continuous solicitation of orders through local agents of the company of goods manufactured outside the state and -delivered into the state, the agents having authority to receive money and notes for the purchase price of such goods, constituted doing business in Kentucky. See, also, on this point,
 
 International Harvester Co.
 
 v.
 
 Department of
 
 Treasury, 322 U. S., 340, 88 L. Ed., 1313.”
 

 Under the Tax Commissioner’s Rule No. 275, the Board of Tax Appeals eliminated from consideration 62 per- cent of the volume of goods manufactured at appellant’s Ohio factories, on the ground that such proportion of appellant’s Ohio manufactured products were shipped to warehouses
 
 outside
 
 Ohio. For the governmental protection to appellant’s 100 per cent manufacturing operations in Ohio the Department of
 
 *76
 
 Taxarion has based its computation of the business fraction upon 38 per cent of the business done in Ohio at appellant’s factories. By the use of Rule" 275, the Board of Tax Appeals made a substantial reduction in the fee to be paid by appellant.
 

 A subsidiary question is set out in appellant’s brief. This question was brought about by appellant changing its accounting period from the calendar year to a fiscal year, which appellant claims resulted in assessing a full year’s tax for a ten months’ period. During the hearing before the board no complaint was made on that score so far as the record discloses. The only mention of such matter in the record is to be found in explanatory notes, to appellant’s exhibits, "to the effect that the company had changed its accounting-year to a fiscal year ending October 31. In its application for rehearing- by the Board of Tax Appeals appellant states that no consideration was given to the point made in appellant’s brief in respect to the fiscal period ended October 31, 1936. An examination of appellant’s annual report for 1936 (a part of the record here) filed with the Tax Commission by appellant gives the date of beginning- of the current annual accounting period as January 1, 1936. The 1937 report gives the date of the beginning- as November 1, 1936, but there is no claim in either report that the company is not liable for the fee for a full year. The record does not disclose that such matter was brought to the attention of the Tax Commissioner upon review under Section 5500, General Code. Therefore such claim, if any, is waived. There is no provision in the statutes for remitting- any portion of the fee. The only authority of the Auditor of State is to charge for collection from a corporation doing business in Ohio one-tenth of one per cent on the value certified by the Tax Commissioner (Section 5499, General Code), and there is no authority in the Tax Commissioner to compute
 
 *77
 
 the business-done portion of the base otherwise than upon the value of the business done by the corporation during the preceding year. (Section 5498, General Code.)
 

 The form of reports for 1936. does contain the statement: “A corporation which filed its statement for admission to do business with the Secretary of State of Ohio on or after January 1, 1936, will not be required to file an annual report until 1937.” Similarly the 1937 form makes the first filing date after admission as 1938. We hold that the decision of the Board of Tax Appeals is not unreasonable or unlawful in this respect.
 

 As pointed out above, the instant case does not involve a tax on sales or income but is solely a fee charged upon the value or proportionate value of the shares of stock of a corporation for the privilege of doing business in Ohio and of owning a part or all of its capital in this state or for a holding of the certificate of compliance of this state authorizing it to do business in this state and is computed in part on business done in a year preceding the year for which the fee is assessed. In the
 
 Aluminum Co. of America case, supra,
 
 which we approve and follow here, and in the instant case, we relied upon and now rely upon,
 
 inter alia, American Mfg. Co.
 
 v.
 
 City of St. Louis,
 
 250 U. S., 459, 63 L. Ed., 1084, 39 S. Ct., 522;
 
 Hump Hairpin Mfg. Co.
 
 v.
 
 Emmerson, Secy, of State,
 
 258 U. S., 290, 66 L. Ed., 622, 42 S. Ct., 305;
 
 International Shoe Co.
 
 v.
 
 Shartel, Atty. Genl.,
 
 279 U. S., 429, 73 L. Ed., 781, 49 S. Ct., 380; and
 
 Hope Natural Gas Co.
 
 v.
 
 Hall, Tax Commr.,
 
 274 U. S., 284, 71 L. Ed., 1049, 47 S. Ct., 639.
 

 The record in this case discloses no instance of double taxation.
 

 Upon hearing and consideration of the record and evidence in this case we are of the opinion that the decision of the Board of Tax Appeals appealed from is
 
 *78
 
 reasonable and lawful and, therefore, that decision should be and hereby is affirmed.
 

 Decision affirmed.
 

 Weygandt, O. J., Zimmerman, Matthias and Hart, JJ., concur.
 

 Bell, J., concurs in paragraphs two, three, four, five and six of the syllabus and in the judgment.
 

 Williams, J., not participating.