## INTERNATIONAL HARVESTER CO. *v.* EVATT, TAX COMMISSIONER.

No. 75. Argued December 12, 1946.—Decided January 6, 1947.

---

*Edward R. Lewis* and *Joseph J. Daniels* argued the cause for appellant. With them on the brief was *Paul N. Rowe.*

*Aubrey A. Wendt* argued the cause and filed a brief for appellee.

Mr. Justice Black delivered the opinion of the Court.

The Supreme Court of Ohio affirmed a decision of that State's Board of Tax Appeals fixing the amount owed by appellant for its state corporation franchise tax for the years 1935 to 1940, inclusive.   146 Ohio State 58, 64 N. E. 2d 53.   In affirming, the Ohio court rejected appellant's contention that the controlling tax act, §§ 5495–5499, Ohio Gen. Code, as applied to appellant, was in violation of the Due Process Clause of the Fourteenth Amendment and the Commerce Clause of the Federal Constitution. The case is here on appeal under 28 U. S. C. § 344.   Appellant repeats its arguments as to invalidity of the tax, but only as to the years 1937 to 1940, inclusive.

Section 5495 of the Ohio Gen. Code provides that each foreign corporation authorized to do business in the State must pay a tax or fee for the "privilege of doing business" or "owning or using a part or all of its capital or property" or "holding a certificate . . . authorizing it to do business in this state."   It is not denied that appellant owed a franchise tax under this section, for it held a certificate to do business in Ohio during all the years in question.   It also owned and operated two large factories at Springfield, Ohio, which produced millions of dollars worth of goods. And it operated four branch selling establishments associated with four warehouses, and fourteen retail stores, all located at various places in Ohio, which stored and sold goods produced at the Ohio factory.

But appellant also owns and operates sixteen factories, nearly a hundred selling agencies, and numerous retail stores in other states.   Goods produced at its Ohio factories are not only sold in Ohio, but in addition, are shipped for storage to out-of-Ohio warehouses to be sold by out-of-Ohio selling agencies to out-of-Ohio customers.   Some are shipped directly to out-of-Ohio customers on orders from out-of-Ohio selling agencies.   Conversely, goods manufactured by appellant out-of-Ohio are shipped to its Ohio

warehouses, and sold by its Ohio selling agencies to Ohio customers. Appellant's claim is that the amount of the tax assessed against it has been determined in such manner that a part of it is for sales made outside Ohio and another part for interstate sales. These consequences result, appellant argues, from the formula used by Ohio in determining the amount and value of Ohio manufacturing and sales, as distinguished from interstate and out-of-state sales.

The tax is computed under the Ohio statute in the following manner: Section 5498 prescribes the formula used in determining what part of a taxpayer's total capital stock represents business and property conducted and located in Ohio. To determine this, the total value of issued capital stock [1] is divided in half. One half is then multiplied by a fraction, the numerator of which is the value of all the taxpayer's Ohio property, and the denominator of which is the total value of all its property wherever owned. The other half is multiplied by another fraction whose numerator is the total value of the "business done" in the State and whose denominator is country-wide business. Addition of these two products gives the tax base, which, when multiplied by the tax rate of 1/10 of 1%, produces the amount of the franchise tax.

In the "business done" numerator, the State included as a part of Ohio business an amount equal to the sales proceeds of a large part of the goods manufactured at appellant's Ohio plants, no matter where the goods had been sold or delivered.[2] A part of the measure of the tax is con-

---

[1] Section 5498 also sets out in some detail the factors to be considered, and those not to be considered, in calculating the total value of a taxpayer's issued and outstanding stock. These provisions are not here at issue.

[2] Rule 275, Tax Commissioner of Ohio, Oct. 13, 1939, exempted from the computation all goods manufactured by appellant in Ohio, but shipped to appellant's out-of-Ohio warehouses before sale.

sequently an amount equal to the sales price of Ohio-manufactured goods sold and delivered to customers in other states. Appellant contends that the State has thus taxed sales made outside of Ohio in violation of the Due Process Clause. A complete answer to this due process contention is that Ohio did not tax these sales. Its statute imposed the franchise tax for the privilege of doing business in Ohio for profit. The state supreme court construed the statute as imposing the tax on corporations for engaging in business such as that in which taxpayer engaged. One branch of that business was manufacturing. It has long been established that a state can tax the business of manufacturing. The fact that it chose to measure the amount of such a tax by the value of the goods the factory has produced, whether of the current or a past year, does not transform the tax on manufacturing to something else. *American Mfg. Co.* v. *St. Louis,* 250 U. S. 459; *Hope Natural Gas Co.* v. *Hall,* 274 U. S. 284, 288–289; *Utah Power & Light Co.* v. *Pfost,* 286 U. S. 165, 189–190; *Wallace* v. *Hines,* 253 U. S. 66, 69; *Freeman* v. *Hewit,* 329 U. S. 249, 255. See also *Adams Mfg. Co.* v. *Storen,* 304 U. S. 307, 313–314, and cases cited in notes 14 and 15.

In the Ohio "business done" numerator, we assume the State also included sales made by Ohio branches to Ohio customers of goods manufactured and delivered to these Ohio customers from out-of-Ohio factories.[3] Appellant's business practice was to conduct and account for its sales agencies' activities separately and distinctly from its factory operations. The State followed this distinction. It treated the sales agencies as conducting one type of busi-

---

[3] The State contends here that it did not include in the "business-done" numerator an amount equal to the proceeds from sales by Ohio branches to Ohio customers of goods which were shipped to the Ohio customers from factories outside Ohio. Appellant insists that it did. We need not resolve this controversy, for we think the result is the same whichever view is taken.

ness and the factories another. Thus it measured the value of the Ohio sales agencies' business by the total amount of the preceding year's Ohio sales of goods manufactured outside of Ohio as well as those manufactured in Ohio. Here again, appellant's contention that this resulted in taxing out-of-state or interstate transactions or sales in violation of the Due Process Clause is wholly without substance. The Ohio sales agencies' business and their sales to Ohio customers were intrastate activities. *International Harvester Co.* v. *Department of Treasury,* 322 U. S. 340. What effect inclusion of this element in the "business done" numerator would have were these transactions not intrastate is a question we need not now decide.

What we have said disposes of the only grounds urged to support the due process contention. It also answers most of the argument made against the Ohio statute on the ground that its application to appellant unduly burdens interstate commerce and therefore violates the Commerce Clause. Of course, the Commerce Clause does not bar a state from imposing a tax based on the value of the privilege to do an intrastate business merely because it also does an interstate business. *Ford Motor Co.* v. *Beauchamp,* 308 U. S. 331, 336. Nor does the fact that a computation such as that under Ohio's law includes receipts from interstate sales affect the validity of a fair apportionment. See *e. g., Hump Hairpin Co.* v. *Emmerson,* 258 U. S. 290; *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113; *American Mfg. Co.* v. *St. Louis, supra; International Shoe Co.* v. *Shartel,* 279 U. S. 429, 433; *Western Cartridge Co.* v. *Emmerson,* 281 U. S. 511. And here, it clearly appears from the background of Ohio's tax legislation that the whole purpose of the state formula was to arrive, without undue complication, at a fair conclusion as to what was the value of the intrastate business for which its franchise was granted. In October, 1924, this Court struck down

Ohio's then corporation franchise tax on the ground that it did not make an apportionment between local and interstate business so as to confine its tax to local business only. The tax was also held to be in violation of the Equal Protection clause. *Air-Way Electric Appliance Corporation* v. *Day*, 266 U. S. 71. In April 1925, the legislature of Ohio passed a new act expressly to cure the defects this Court had found in the old law.[4] 111 Ohio Laws 471. That 1925 Act, as slightly amended,[5] is the law under which the present apportionment was made.

Plainly Ohio sought to tax only what she was entitled to tax, and there is nothing about application of the formula in this case that indicates a potentially unfair result under any circumstances. It is not even contended here that the amount of these taxes could be considered to bear an unjust or improper relation to the value of the privilege of doing business in Ohio if the legislature had imposed a flat franchise tax of the same amounts for the respective years which application of this formula has produced. See *Hump Hairpin Co.* v. *Emmerson, supra* at 296. Furthermore, this Court has long realized the practical impossibility of a state's achieving a perfect apportionment of expansive, complex business activities such as those of appellant, and has declared that "rough approximation rather than precision" is sufficient. *Illinois Central Ry.* v. *Minnesota*, 309 U. S. 157, 161. Unless a palpably disproportionate result comes from an apportionment, a result

---

[4] In vetoing the bill which became the law, on grounds not here relevant, the Governor of Ohio said: "The supreme court decision, of course, made it necessary for you to devise a basis for the levy of the tax other than on the authorized capitalization of foreign corporations. You have seen fit to embody in the pending measure an asset value or total net worth basis for the assessment of the tax on domestic corporations as well." Ohio House Journal 1925, Vol. 111, 874. The bill was passed over his veto.

[5] 112 Ohio Laws 410 (1927); 113 Ohio Laws 637 (1929); 114 Ohio Laws 714 (1931); 115 Ohio Laws 589 (1933).

which makes it patent that the tax is levied upon interstate commerce rather than upon an intrastate privilege, this Court has not been willing to nullify honest state efforts to make apportionments. See cases collected in opinion of Mr. Chief Justice Stone, dissenting, *Northwest Airlines* v. *Minnesota,* 322 U. S. 292, 325. A state's tax law is not to be nullified merely because the result is achieved through a formula which includes consideration of interstate and out-of-state transactions in their relation to the intrastate privilege. Since it has not been demonstrated that the apportionment here achieves an unfair result, *cf. Hans Rees' Sons, Inc.* v. *North Carolina,* 283 U. S. 123, 134, 135, and since it is assessed only against the privilege of doing local Ohio business of manufacturing and selling, we do not come to the question, argued by appellant, of possible multiplication of this tax by reason of its imposition by other states. None of them can tax the privilege of operating factories and sales agencies in Ohio.

*Affirmed.*

MR. JUSTICE RUTLEDGE, concurring.

I concur in the opinion and judgment of the Court. But I desire to add that, in the due process phase of the case, I find no basis for conclusion that any of the transactions included in the measure of the tax was so lacking in substantial fact connections with Ohio as to preclude the state's use of them, cf. *McLeod* v. *Dilworth Co.,* 322 U. S. 327, dissenting opinion at 352–357, if indeed a limitation of this sort were material to an apportionment found on the whole to be fairly made. For the rest, as the Court holds, the apportionment clearly is valid.