*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VECTREN INFRASTRUCTURE SERVICES CORP., successor-in-interest to MINNESOTA LIMITED, INC.,

        Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

        Defendant-Appellee.

FOR PUBLICATION
March 12, 2020
9:05 a.m.

No. 345462
Court of Claims
LC No. 17-000107-MT

Before: TUKEL, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

This case presents the complex question of how the gain on the sale of an out-of-state business, which conducts some of its business activities in Michigan, should be taxed under the Michigan Business Tax. Defendant applied the statutory formula and declined to allow calculation under an alternate formula. The trial court agreed with defendant. We agree, at least in part, with plaintiff and reverse.

Minnesota Limited, Inc. (MLI) was an S-corporation headquartered in Big Lake, Minnesota engaged in the business of constructing, maintaining, and repairing oil and gas pipelines, as well as providing HAZMAT response. MLI, which originated as a family business, had grown over the course of its 52-year history to employ over 600 employees at seasonal peak and serve a 24-state territory. MLI's service territory primarily included locations in the northern Midwest, such as Minnesota, Wisconsin, Iowa, and the Dakotas, including some years in the state of Michigan. MLI provided these services to its customers on a contract-by-contract basis, such that MLI's project locations were different every year. At no time did MLI maintain a permanent business location in Michigan or retain permanent employees in the state.

Around the mid-1990s, MLI was owned 50-50 by two siblings; when one began experiencing health issues around 2010 and no longer wished to be involved in the company business, the siblings decided to sell MLI. Notably, during the period that MLI was seeking a buyer in the summer of 2010, Enbridge Energy retained MLI to assist in the cleanup of a severe

-1-

oil pipeline spill in Kalamazoo, Michigan. MLI brought minimal equipment and employees to this project, which was performed in part during the off season when the ground was frozen making it difficult to service pipelines. MLI rented most of the equipment it used and hired Michigan union employees to perform the work.

Ultimately, while the Enbridge project was still ongoing, MLI sold all its assets on March 31, 2011, including capital assets and intangible assets of receivables, retainages, cash, prepaid expenses, inventory and goodwill, to Vectren ("the Sale"). MLI elected to treat the sale of its stock as a sale of its assets under federal Internal Revenue Code 26 USC 338(h)(10). The purchase price was $80,000,000.

MLI timely filed its MBT return for the 2010 tax year, as well as its MBT return for the period before the sale, i.e., the short year between January 1, 2011 and March 31, 2011 (the Short Year). To accurately tax only Michigan business activity, the MBTA employs an apportionment formula: mainly, the MBTA determines tax liability by multiplying the taxpayer's preapportioned "tax base" by the taxpayer's "sales factor," which is the taxpayer's Michigan sales divided by sales everywhere, to arrive at the taxpayer's Michigan tax base. The tax rate is applied to this tax base. See MCL 208.1201(1); MCL 208.1301. In its return for the Short Year, MLI included the Sale in its preapportioned tax base and in the denominator of the sales factor, i.e., MLI included it in the "sales everywhere." Inclusion of the Sale in this manner resulted in a sales factor of 14.9860 percent.

In December 2014, the Department initiated an audit of MLI's MBT return for the 2010 calendar year and the Short Year between January 1, 2011 and March 31, 2011. For the Short Year, the auditor found that MLI had improperly included the gain from the Sale in the denominator of the sales factor, thereby overstating its total sales and reducing its Michigan tax liability. The auditor adjusted the sales factor by including the gain on the Sale in the preapportioned tax base but excluding it from the sales factor. This calculation increased the sales factor from 14.9860 percent to 69.9761 percent, resulting in additional tax liability. Thereafter, the Department issued an intent to assess for the tax deficiency.

MLI sent a letter to the Department asking for an informal conference and requesting alternative apportionment for the Short Year. In its request, MLI asserted that all the receipts and income from the Sale should be treated as a "sale" under MCL 208.1115(1) and should be sourced to Minnesota in the sales factor to arrive at an equitable apportionment. MLI posited that sourcing the Sale to Michigan would result in an unconstitutional distortion by sourcing to Michigan a percentage of income out of all proportion with business actually transacted in the state and also attributing the long-term gain in the company's assets to Michigan. Alternatively, MLI asked that the Sale be treated as not subject to tax, given that it is unconstitutional to tax value earned outside the state's borders. MLI explained that the Sale was not conducted in MLI's regular course of business and, therefore, was nonbusiness income. MLI pointed out that other jurisdictions treat the liquidation of business assets as cessation of business activity rather than a transaction in the regular course of business, and that the Sale should therefore be treated as nonoperational, nonbusiness income earned from a company's business activities over time.

Ultimately, the Department denied MLI's alternative apportionment request. The Department first noted that MLI's burden was to show by clear and cogent evidence that the

statutory formula is distortive before alternate apportionment is allowed. The Department found that MLI had failed to meet its burden, stating:

> While you have provided detail on how the selling price was derived, you have not provided any evidence to the Department that the business activities in Michigan did not contribute to the gain realized or that the formula does not provide Michigan with an equitable allocation of income. Further, including gain in the tax base is not an unusual fact situation or one that necessarily demonstrates that application of the statutory apportionment formula does not reflect [MLI's] business activity in Michigan.

Consequently, the Department determined that MLI had not overcome the presumption that the statutory apportionment formula fairly represents MLI's business activity in Michigan for the period at issue. Soon after the denial, the Department issued its Final Assessment for the Short Year, reflecting $2,926,765.07 due including penalty and interest.

Thereafter, plaintiff filed suit in the Court of Claims, raising four counts. In Count I, plaintiff alleged that the Department's failure to include the gain from the Sale in the sales factor denominator for the Short Year results in a grossly distortive tax, as the calculation used does not fairly represent MLI's business activities in the State, and violates the Equal Protection, Due Process, and Commerce Clauses of the Constitution, mandating use of an alternative formula. In Count II, plaintiff alternatively alleged that the gain on the Sale is nonoperational, nonrecurring, nonbusiness income that should be excluded from MLI's tax base, whereas its inclusion results in taxation of extraterritorial values in violation of the Equal Protection, Due Process, and Commerce Clauses of the Constitution. Count III posited that the Department unlawfully calculated MLI's tax base by including the gain on the Sale; specifically, plaintiff alleged that under the plain language of the MBTA, the sale of shareholder's stock is not a "business activity" to be included in an S corporation's tax base and the federal method of accounting, i.e., MLI's election to treat the liquidation as a sale of assets under the Internal Revenue Code, is irrelevant. Count IV alleged that the penalty should be abated because plaintiff timely paid the tax based on reasonable interpretations of the MBTA.

The parties filed cross-motions for summary disposition. After oral argument, the Court of Claims granted summary disposition for the Department. The court determined that the Department had properly included the Sale in MLI's tax base, because the Sale qualified as "business income" within the meaning of the MBTA. In so concluding, the court rejected plaintiff's argument that the Sale does not qualify as "business income" because it cannot be "attributable" to MLI and relied heavily on the fact that the shareholders had elected to treat the Sale as a sale of all of MLI's assets under 26 USC 338(h)(10). As to MLI's request for alternative apportionment, the court, relying on *Trinova Corp v Dep't of Treasury*, 433 Mich 141; 445 NW2d 428 (1989), concluded that MLI disputed the inclusion of the Sale in its tax base, which the court stated did not concern the constitutionality of the apportionment formula. For this reason alone, the court held that "plaintiff's appeal to alternative apportionment [wa]s unavailing." As to plaintiff's contention that the tax imposed taxed extraterritorial activity, the court determined that plaintiff had failed to provide any documentary evidence in support: it viewed the historical data as merely an indication that MLI's Michigan activity was out of proportion with activity in previous years and noted that no evidence had been submitted to show that MLI's goodwill should

-3-

be sourced entirely to Minnesota. Given the conclusion that plaintiff's claim of unfair apportionment was meritless, the court held that plaintiff's constitutional claims failed as well. Finally, the court rejected plaintiff's claim that the penalty should be waived because plaintiff had failed to meet its burden to justify abatement of the penalty.

Plaintiff raises several issues on appeal. We need not address all of these issues as we find one to be dispositive in plaintiff's favor. We do note, however, that we do not necessarily disagree with defendant's basic position on how to calculate the tax under the statutory formula. Its position is reasonable in light of the differing definitions of "business activity," "business income," and "sales" and how those terms are employed in calculating the tax base and applying the sales factor to apportion the sales to Michigan. But, for the reasons discussed below, we conclude that to apply the statutory formula, as defendant did, to the circumstances of this case would result in the imposition of a tax in violation of the Commerce Clause. Accordingly, allowing for an alternative formula, as plaintiff requested, would be necessary to avoid the constitutional violation.

In recognition of the difficulty in identifying purely intrastate activity when a unitary business is involved, the United States Supreme Court has not required the use of a particular formula to the exclusion of others. Rather, the Due Process and Commerce Clauses must simply be "fair," i.e., the formula must fairly determine the portion of income that can be "fairly attributed to in-state activities." *Container Corp of America v Franchise Tax Bd*, 463 US 159, 169; 103 S Ct 2933; 77 L Ed 2d 545 (1983). Fairness, in part, requires that the "choice of factors used in the formula 'must actually reflect a reasonable sense of how [the business activity] is generated." *Id*. An apportionment formula will be struck "if the taxpayer can prove "by 'clear and cogent evidence' that the income attributed to the State is in fact 'out of all appropriate proportions to the business transacted . . . in that State,' [*Hans Rees' Sons, Inc v North Carolina*, 283 US 123, 135; 51 S Ct 385; 75 L Ed 879 (1931)], or has 'led to a grossly distorted result[.]' " *Container Corp of America*, 463 US at 170.

The Michigan Legislature recognized the conundrum of allocating income to the state and, consistent with Supreme Court precedent, provided for alternative apportionment under MCL 208.1309 in the instance that the statutory formula resulted in a tax that was not fair. That provision governs the procedural and substantive requirements for seeking alternate apportionment and provides:

 (1) If the apportionment provisions of this act do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for or the treasurer may require the following, with respect to all or a portion of the taxpayer's business activity, if reasonable:

(a) Separate accounting.

(b) The inclusion of 1 or more additional or alternative factors that will fairly represent the taxpayer's business activity in this state.

(c) The use of any other method to effectuate an equitable allocation and apportionment of the taxpayer's tax base.

(2) An alternate method may be used only if it is approved by the department.

(3) The apportionment provisions of this act shall be rebuttably presumed to fairly represent the business activity attributed to the taxpayer in this state, taken as a whole and without a separate examination of the specific elements of either tax base unless it can be demonstrated that the business activity attributed to the taxpayer in this state is out of all appropriate proportion to the actual business activity transacted in this state and leads to a grossly distorted result or would operate unconstitutionally to tax the extraterritorial activity of the taxpayer.

(4) The filing of a return or an amended return is not considered a petition for the purposes of subsection (1).

Plaintiff presented clear and cogent evidence that the statutory formula, as applied, attributed business activity to Michigan "out of all appropriate proportion to the actual business activity transacted in the state," *Hans Rees' Sons*, 283 US at 135 and led to a grossly distorted result, and also operated to unconstitutionally tax extraterritorial activity. Our basis for this conclusion is, unlike many other aspects of this case, fairly straightforward. The value of the business and its assets was built up over many years and attributable to activity in many states. Indeed, much of the activity and assets involved in the Sale never had any connection to Michigan. The problem is then compounded when the Sale occurs in a time period (the Short Year) in which an unusually large percentage of the business activity occurred in Michigan. Then with the application of the statutory formula, an unreasonably large portion of the Sale is thus attributed to Michigan and taxed under the MBT. Simply put, the apportionment formula is unconstitutional as applied to MLI under the circumstances of this case.

To rebut the presumption that the statutory apportionment formula is fair, the taxpayer must show by "clear and cogent evidence" that (1) "the business activity attributed to the taxpayer in this state is out of all appropriate proportion to the actual business activity transacted in this state and leads to a grossly distorted result or[,]" alternatively, (2) the apportionment formula "would operate unconstitutionally to tax the extraterritorial activity of the taxpayer." MCL 208.1309; *Trinova Corp*, 433 Mich at 158 (stating burden of proof).

A state may not tax more than its fair share of interstate commerce and, to be valid, a tax imposed on a business that conducts taxable activities both within and outside a state's borders must be apportioned to the activities within the state. See *Asarco, Inc v Idaho State Tax Comm*, 458 US 307, 315; 102 S Ct 3103; 73 L Ed 2d 787 (1982). However, the profitability of such modern business organizations—which take advantage of functional integration, centralization of management, and economies of scale across state borders—is tied to the business as a whole, which makes it misleading to characterize business income as having a single isolated source. *Mobil Oil Corp v Comm'r of Taxes*, 445 US 425, 438; 100 S Ct 1223; 63 L Ed 2d 510 (1980). Exact precision in apportionment, therefore, is not required, a general approximation is permitted, and a formula that incidentally taxes some out-of-state business activity is constitutionally permissible. *Moorman Mfg Co v Bair*, 437 US 267, 272; 98 S Ct 2340; 57 L Ed 2d 197 (1978). Yet, while the United States Supreme Court has not required use of a particular formula, it has required that such an apportionment formula be fair. *Container Corp of America*, 463 US at 164, 169. An apportionment formula is valid if it does not operate to unreasonably and arbitrarily

attribute to the taxing state a "percentage of the total income out of all appropriate proportion to the business transactions by the taxpayer in that state." *Hans Rees' Sons, Inc*, 283 US at 135. Stated differently, a formula that has a palpably disproportionate result that patently taxes out-of-state activity will be nullified. *International Harvester Co v Evatt*, 329 US 416, 422-423; 67 S Ct 444; 91 L Ed 390 (1947).

The difficulty with these general principles is their application. In discerning whether impermissible distortion has occurred, courts are swayed by numerous factors unique to each case, making it nearly impossible to express any set of general rules as to when impermissible distortion occurs. A review of pertinent caselaw demonstrates this point, but will also aid in determining whether distortion occurred in this case.

In *Hans Rees' Sons*, the United States Supreme Court struck down a one-factor apportionment formula that was based on ownership of tangible property. *Hans Rees' Sons*, 283 US at 128-129, 135-136. The taxpayer was in the business of manufacturing leather for wholesale and retail, with warehouses in New York and its manufacturing plant in North Carolina. *Id*. at 126-127. The evidence showed that no more than 21 percent of the taxpayer's income could be attributed to the taxing state, but that between 66 and 85 percent of the taxpayer's total income had been attributed to the state. *Id*. 128, 134-135. The Supreme Court struck down the one-factor formula's application to that taxpayer because, although fair on its face, it operated "so as to reach profits which are in no just sense attributable to transactions within its jurisdiction" and unreasonably and arbitrarily attributed profits to North Carolina that were "out of all appropriate proportion to the business transaction [by the taxpayer] in the state." *Id*. at 134-136.

In *Container Corp of America*, the Supreme Court upheld a three-factor apportionment formula, which used an averaged ratio of payroll, property, and sales to apportion in-state activity, and rejected evidence intended to show systematic distortion. *Container Corp of America*, 463 US at 170, 181-182. Mainly, the taxpayer asserted that the formula failed to consider that the taxpayer's foreign subsidiaries were significantly more profitable and consequently distorted the true allocation of income. *Id*. at 181. The Court found that this argument was based on "geographical accounting," which fails to account for contributions that result from the operation of a multistate business as a whole, and that the three-factor formula had gained wide approval because "payroll, property, and sales appear in combination to reflect a very large share of the activities by which value is generated." *Id*. Further, the taxpayer had failed to demonstrate a substantial margin of error in the three-factor apportionment formula; the difference between the formula used and that advocated by the taxpayer was only a 14 percent increase, which the Court noted fell far short of the 250 percent increase in *Hans Rees' Sons*. *Container Corp of America*, 463 US at 183-184.

The Michigan Supreme Court, in *Trinova v Dep't of Treasury*, also considered whether application of the three-factor apportionment formula of Michigan's Single Business Tax Act's (SBTA), MCL 208.1 *et seq*., was constitutional. *Trinova v Dep't of Treasury*, 433 Mich at 144-147. The SBTA, which was the predecessor statute to the MBTA, imposed a value added tax on business activity in the state; the taxpayer's tax base was allocated to Michigan by multiplying the total tax base by the ratio of Michigan sales, Michigan wages, and Michigan property, to which the tax rate then applied. *Id*. at 150-153. The Court rejected the contention that wages 40 times greater than actuality and depreciation 1000 times greater than actual depreciation was evidence

of an unfair apportionment "out of all appropriate proportion" to the taxpayer's actual business transactions in Michigan. *Id*. at 163-164. In so concluding, the court made clear that it could not "ignore the integrated nature of formulary apportionment," which was better suited to take account of a unitary enterprise's business activity, and rejected geographical accounting, which fails to account for contributions to business activity as a result of functional integration. *Id*. at 162. According to the Court, reliance on just two factors of the apportionment formula, by showing that they were not actually accurate, did not demonstrate distortion where the taxpayer's apportioned tax base was almost $20 million, or 9 percent of its total tax base, and where it made sales of nearly $104 million in Michigan. *Id*. at 164.

Well before *Trinova*, however, the Michigan Supreme Court struck down application of a formula that imposed a corporate franchise tax that burdened interstate commerce. *Panhandle Eastern Pipe Line Co v Michigan Corp & Securities Comm*, 346 Mich 50, 56; 77 NW2d 249 (1956). In that case, the taxpayer was a Delaware corporation engaged in the business of distributing natural gas through pipelines it owned, including pipelines it owned in Michigan. *Id*. at 51-52. The taxpayer had 7 percent of its pipeline mileage in Michigan, 5 percent of its total property in Michigan, 3.5 percent of its payroll in Michigan, and 2 percent of its operating expenses in Michigan, and its Michigan sales were around 6 percent. *Id*. at 56. In calculating the tax, the tax commission had included 50 percent of the taxpayer's interstate receipts. *Id*. In striking down that formula as an arbitrary and "unjust burden upon interstate commerce," the court simply concluded: "In our opinion it is clear that the formula used by the commission includes receipts from a business not related to plaintiff's intrastate business." *Id*.

We conclude that this is an exceptional case where the taxpayer has met its burden of providing clear and cogent evidence that the business activity attributed to it "is out of all appropriate proportion to the actual business activity transacted in this state and leads to a grossly distorted result." MCL 208.1309. The statutory formula as applied, which includes 100 percent of the gain on the Sale in MLI's preapportioned tax base, includes income from the Sale that is not related to MLI's Michigan business activities. Application of the statutory formula results in an allocation of 70 percent of the gain on the Sale to Michigan, meaning approximately $38 million is attributed to MLI's business activity in the state of Michigan. While some of MLI's value can undoubtedly—and should undoubtedly—be attributed to its business activity in Michigan, the undisputed history of MLI's sales in the state is that those sales averaged around 7 percent of its total sales, are evidence that well over a majority of the value inherent in MLI stemmed, not from its activity in Michigan during the Short Year or even over the years, but from intangible assets built-up in multiple other states over time. To impose a tax on 70 percent of the gain of the Sale is not commensurate with the "protection, opportunities and benefits" that Michigan conferred on MLI, where the majority of the activities making up MLI's fair market value at the time of the Sale had occurred outside Michigan's borders. See *Wisconsin v JC Penney Co*, 311 US 435, 444; 61 D Ct 246; 85 L Ed 267 (1940). Again, by looking at the Short Year and its unusual concentration of activity in Michigan, an unconstitutional distortion is created.

Application of the statutory formula in this case runs afoul of the Due Process and Commerce Clauses, incorporated in the statute, because it does not fairly determine the portion of income from the Sale that is reasonably attributed to in-state activities. Fairness, in part, requires that the "choice of factors used in the formula 'must actually reflect a reasonable sense of how [the business activity] is generated." *Container Corp of America*, 463 US at 169. Looking only at the

Short Year does not actually and reasonably reflect how the income from the Sale was generated. As in *Hans Rees' Sons*, the statutory formula when applied in this case operates "so as to reach profits which are in no just sense attributable to transactions within its jurisdiction." *Hans Rees' Sons*, 283 US at 134.

Additionally, both the Court of Claims and the Department rely on *Trinova* to support the Department's apportionment. But *Trinova* involved the SBTA's three-factor apportionment formula. The Court effectively held that showing a distortion as to a single factor after the ratios are averaged did not impeach the basic premise of the three-factor formula, given that the business was to be viewed as a whole and that the *averaged* ratios actually reflected a reasonable sense of how the taxpayer's business activity was generated. *Trinova* is not helpful to the Department's position; that the Court accepted an actual distortion of up to 1000 times greater than actual is immaterial to this case where the three-factor apportionment formula is not at issue. Rather, the MBT uses a single factor, sales. And, unlike the three-factor formula in *Trinova*, MLI's Michigan sales alone do not reasonably reflect how the gain on the Sale was generated. *Trinova* is inapposite.

We should briefly address that argument that plaintiff did not follow the statute's procedural requirements by petitioning for alternative apportionment before filing its MBT return. Instead, it filed its return using an alternate apportionment method, including the Sale in the sales factor denominator, and only after the Department's audit removing the Sale to the tax base did MLI ask for an alternate accounting. The Department, however, entertained MLI's request at the informal level and, while pointing out the procedural irregularity in the Court of Claims, the Department did not argue that the request should be denied for failure to strictly comply with the statutory directive. The Department also did not ask for such relief before this Court. Consequently, to the extent the Department may make this argument it should be considered to have waived the procedural irregularity or to otherwise have impliedly consented to try the substantive issue of whether the tax is distortive absent compliance with the statute's procedural requirements. See *Fraser Twp v Haney (On Remand)*, ___ Mich App ___; __ NW2d ___ (Docket No. 337842, rel'd 1/21/20) (indicating that when a party fails to object to an issue raised, and the court subsequently addresses the issue absent objection, the issue is tried by implied consent). Moreover, as discussed above, if an alternative formula is not applied, the constitutional defect cannot be cured.

The Legislature anticipated that the statutory formula may present constitutional defects in particular cases, thus providing for the possibility of an alternative apportionment under § 1309. Reading this section as a whole, if a taxpayer believes the apportionment provisions unfairly represent the extent of the taxpayer's business activity in the state, the taxpayer must (1) petition to propose a "reasonable" alternative method of apportionment, which may be used only if approved by the Department; and (2) rebut the presumption that the statutory apportionment formula fairly represents the taxpayer's business activity in the state. We, however, decline plaintiff's request that we ascertain the alternate method to be employed. The statute clearly directs that this must be settled between the parties; that is, the method must ultimately be approved by the Department.

Accordingly, this matter must be returned to the Department for the determination of the appropriate alternate method to be used. We encourage the parties to engage in a good-faith collaboration to arrive at such a method. Ultimately, just as the Department may not rely on the

statutory formula in this case, neither can it insist on an alternate method that does not cure the constitutional defect by continuing to attribute out-of-state revenue to Michigan. And if plaintiff believes that the method ultimately adopted by the Department is constitutionally flawed, it may renew its challenges.

The trial court's decision is reversed and the tax assessment and penalty in this case are vacated. The matter is remanded for the parties to determine an alternate method of apportionment. We do not retain jurisdiction. No costs, neither party having prevailed in full.

/s/ Jonathan Tukel
/s/ David H. Sawyer
/s/ Michael J. Riordan